**Electronically Filed
Supreme Court
SCWC-13-0003062
05-DEC-2016
10:24 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellee,

vs.

ROBERT TETU,
Petitioner/Defendant-Appellant.

SCWC-13-0003062

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-13-0003062; CR. NO. 10-1-0833)

DECEMBER 5, 2016

McKENNA, POLLACK, AND WILSON, JJ., AND RECKTENWALD, C.J.,
CONCURRING AND DISSENTING, WITH WHOM NAKAYAMA, J., JOINS

OPINION OF THE COURT BY POLLACK, J.

This case presents the question of whether a defendant charged with committing a criminal offense on private property has a right to visit the crime scene. We hold that the constitutional provisions providing for effective assistance of counsel and a fair trial afford a defendant, subject to

appropriate restrictions, with the right to access the scene of the alleged offense.

## I.   BACKGROUND

### A. Circuit Court Proceedings

On March 25, 2010, at about 2:00 a.m., a surveillance camera filmed Robert Tetu, who was wearing a backpack, entering the uninhabited basement area of Maunaihi Terrace, a private condominium building in Honolulu.  The video footage recorded Tetu entering into two locked utility closets with an unknown tool and wiping the door knobs afterwards with his jacket.[1]  Tetu is then seen leaving the closet with a backpack-type bag in one hand, a black plastic garbage bag in the other hand, and a "mini mag light type flash light" in his mouth.  The next day, after reviewing the video footage, the condominium manager inspected the storage closets and noticed that an electric grinder and several emergency lights and batteries were missing.

On May 24, 2010, Tetu was charged with burglary in the second degree in violation of Hawaii Revised Statutes (HRS) § 708-811 (1993).[2]  As part of discovery, the defense

---

[1]    "Storage closets" and "utility closets" are used interchangeably.

[2]    HRS § 708-811 provides in relevant part,

(1) A person commits the offense of burglary in the second degree if the person intentionally enters or remains unlawfully in a building with intent to commit therein a crime against a person or against property rights.

(continued. . .)

received the police reports, which included copies of the surveillance footage, eight photographs, and two diagrams of the basement where the utility closets were located. The photographs showed the fire-exit door through which Tetu entered, the short hallway where the surveillance camera was located, the exterior doors to the utility closets, and a few items on the shelves inside one of the storage closets. Tetu's counsel went to Maunaihi Terrace on November 18, 2010 in order to inspect the premises, but he was denied access and told to "coordinate an inspection through the resident manager." Thereafter, defense counsel sent an email to the condominium manager to arrange a visit. The email, which was copied to the prosecutor, informed the manager that the prosecutor was also interested in visiting the condominium. In response to the email, the manager told Tetu's counsel that the request would be presented to the condominium homeowner's association or board of directors. Counsel, however, did not receive a further response.

Tetu filed a pretrial motion to compel discovery in the Circuit Court of the First Circuit (circuit court)[3]

---

(. . .continued)
(2) Burglary in the second degree is a class C felony. HRS § 708-811.

[3]    The Honorable Colette Y. Garibaldi presided.

requesting access to the condominium premises, arguing that "location is everything" and that "[t]he defense must examine the area from its own perspective." The motion provided four reasons why access to the condominium was necessary. First, "[t]he State's diagrams, video[,] and photograph discovery d[id] not adequately orient [Tetu] and [his] counsel to the area in question for purposes of cogently presenting this case to a jury." Second, the footage only included a "partial photo" of the interior of one of the utility closets. Third, noting that the diagrams were not drawn to scale, the defense requested access to "help counsel to intelligently question and cross-examine witnesses, present visual evidence to the jury and to understand the account" of Tetu, who was in custody. Fourth, access was needed to "photograph areas which may be significant to the defense if they are not already depicted in the discovery already produced." The motion requested that the court issue an order directing the prosecution "to make Maunaihi Terrace available for inspection, measurement, and photographs" or directing the complaining witness to make the premises available under reasonable conditions.

The State opposed the motion, arguing that Rule 16 of the Hawai'i Rules of Penal Procedure (HRPP) (2012) only required the prosecution to deliver material and information within the prosecutor's possession or control or in the possession or

control of other governmental personnel.  The State also argued that because eight months had passed before defense counsel first attempted to access the condominium and fifteen months had elapsed since the incident, any inspection or photographs taken of the premises would not accurately depict the scene at the time of the offense and would not be relevant or admissible under Rule 401[4] and Rule 402[5] of the Hawaii Rules of Evidence (HRE).  Alternatively, the State contended that, even if access to the premises was relevant, access should be barred under HRE Rule 403[6] because it would be cumulative of the materials already provided to Tetu by the prosecution.

---

[4]    HRE Rule 401 states in pertinent part,

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

HRE Rule 401 (1993).

[5]    HRE Rule 402 provides,

All relevant evidence is admissible, except as otherwise provided by the Constitutions of the United States and the State of Hawaii, by statute, by these rules, or by other rules adopted by the supreme court.  Evidence which is not relevant is not admissible.

HRE Rule 402 (1993).

[6]    HRE Rule 403 states,

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

HRE Rule 403 (1993).

A hearing was held on the motion to compel discovery. No representatives from Maunaihi Terrace were present. Defense counsel argued that Tetu's constitutional rights to effective representation and to confront witnesses would override any privacy considerations. The circuit court concluded, however, that any evidence at the condominium would not be relevant under HRE Rule 401. The court also determined that because there was video surveillance, there was "no real plausible justification" for access to the crime scene. The court stated that Tetu's request for access "appears to be speculative and conjecture with a hope to turn up something." Additionally, the court noted that because time had passed since March 2010, access to the condominium might not have been helpful. Accordingly, the court held that HRPP Rule 16 did not apply to Tetu's request for access and denied the motion to compel.

Approximately two months later, the prosecution--without defense counsel's knowledge--visited the crime scene with the condominium manager to inspect the basement and take additional photographs. When the defense was provided with these new photographs prior to trial, Tetu sought to exclude their admission into evidence. The defense argued that fairness demanded that the prosecution not be allowed to visit the crime scene and collect evidence for presentation at trial after the defense's request to do the same was denied. The prosecutor

stated that she went to the condominium to take additional photographs so that the jurors could have "a bigger or a better idea" of what the condominium building looked like. Tetu's counsel argued that this was inconsistent with the State's earlier position that there was "no need" to take additional photographs of the alleged crime scene.[7]

In response to the court's question regarding the two sets of photographs, defense counsel stated that while the new photographs showed differences in the closets' contents, major differences were not apparent. The court concluded that because of the existence of the video footage and the facts of the case, it stood by its original ruling denying the motion to compel discovery.[8] The court also denied the defense's motion to exclude admission of the prosecution's newly obtained photographs.

---

[7] There was a change in the assigned prosecutor between the defense's motion to compel discovery and the hearing to exclude the additional photographs.

[8] The circuit court noted, "I do recall the earlier motion [to compel discovery] as well since the Court presided over it." The court referenced Henshaw v. Commonwealth, 451 S.E.2d 415 (Va. Ct. App. 1994), a case in which the defense counsel requested access to the crime scene based on reasons very similar to those Tetu's counsel had articulated. There, the Court of Appeals of Virginia held that although defense counsel should have been granted access to the crime scene, the error was harmless. Id. at 420. The circuit court distinguished Henshaw from Tetu's request because, in Henshaw, there was no video surveillance and one of the claims was self-defense in which specifications of a room's height, width, and length were relevant.

At trial, the State's first witness was the condominium manager. Using a blueprint of the condominium, the prosecution asked the manager to orient the court to the location of the elevators and the utility closets in the basement of the building.

> [Manager]: Well, there's elevator mauka and elevator makai, and it's called electrical closet and it's called stor[age], but it's another electrical closet.
>
> [Prosecutor]: Okay. So they're right across from each other, the two utility rooms?
>
> [Manager]: Yes, and that's the little hallway there.

The prosecution used the photographs that the defense had moved to exclude to identify several objects and rooms shown in the photographs. Next, the prosecution played the surveillance video for the jury and asked the manager to narrate what he saw and to place the events of the video in context with the building's layout.

> [Prosecution]: And what part of the basement is that?
>
> [Manager]: He just headed towards the laundromat, the laundry room.
>
> [Prosecution]: And is there a hallway that connects all sides of the basement to the elevators?
>
> [Manager]: Sorry, yes. There's another hallway just like this right on that side where he just emerged from.

The manager described Tetu breaking into two of the closets with some kind of tool, wiping the door handles with his jacket, and leaving the closets with a bag of "stuff" and a flashlight in his mouth. The manager testified that the wood around the door

knobs was damaged after the incident and that only those persons with keys had access to the storage closets, as he always kept the doors to the closets locked.

Tetu's counsel cross-examined the condominium manager and likewise attempted to establish the layout of the basement area where the utility closets were located.

> [Defense]: When we went over the photographic evidence, you made reference to a makai utility room and a mauka utility room, correct?
>
> [Manager]: Yes.
>
> [Defense]: Okay.  And when I saw some reports referenced to east and northeast utility closets, do you ever use those distinctions?
>
> [Manager]: I don't, no.
>
> [Defense]: So if there's a reference to an east closet, would you be able to tell us if that's the mauka or makai one?
>
> [Manager]: I've never heard it referred to as the east or -- or what did you say?
>
> [Defense]: Northeast.  So your distinction is mauka-makai?
>
> [Manager]: Yes.
>
>    . . . .
>
> [Defense]: Okay.  Sir, I'm going to show you Exhibits 23 and 24 in evidence.  I'll ask you -- this is 23.  Which -- which utility closet is this one?
>
> [Manager]: This is the mauka utility closet.
>
> [Defense]: And, okay, and 24 would be makai?
>
> [Manager]: It's the same -- no, it's the same one.
>
> [Defense]: It's the same closet?
>
> [Manager]: Yeah.
>
> [Defense]: Oh, okay.  Sorry.  Oh, my mistake.  Okay.

Tetu testified that he did what was shown on the video, but that he entered the building to retrieve his then-wife's clothing and not to steal anything.  Tetu explained that he had been arguing with his former wife, with whom there was a substantial language barrier, when he dropped her off near Manauihi Terrace a few hours prior to the incident.  He testified that she called him to pick her up and that when he arrived, she let him into the building.  Tetu stated that he went in to help her pick up her bag, and she told him that it was in a closet by an elevator.  Tetu explained that he used a piece of wire to open the closet, which is where he found his former wife's bag.  He related that he looked inside the bag to make sure it contained her clothes and left without taking anything else.  Tetu testified that there were more valuable things in the closet, such as a computer, and that if he had intended to take anything, it would not have been a flashlight and some batteries.

Tetu's former wife testified as a rebuttal witness for the State.  She related that she never asked Tetu to pick up a bag of her clothes and that she had never been to Maunaihi Terrace or stored anything there.

In its closing argument, the defense argued that because Tetu entered with the intent to retrieve his former wife's clothing and not to steal anything, Tetu was a

trespasser, not a burglar.  The court instructed the jury on the elements of burglary in the second degree and criminal trespass in the first degree under HRS § 708-813 (Supp. 2000).[9]  The jury found Tetu guilty of burglary in the second degree, and he was sentenced to five years of imprisonment.

## B. Appellate Proceedings

Tetu appealed the judgment of conviction to the Intermediate Court of Appeals (ICA), arguing that (1) the circuit court erred in denying his discovery request to access the crime scene and that (2) the verdict was not supported by the evidence adduced at trial.  The State responded that the right to discovery in a felony case is the right to receive material and information possessed by the prosecution and its agents concerning the case.  Because the State did not possess

_____

[9]      HRS § 708-813 provides in relevant part,

> (1) A person commits the offense of criminal trespass in the first degree if:
>
> (a) That person knowingly enters or remains unlawfully:
>
>> (i) In a dwelling; or
>>
>> (ii) In or upon the premises of a hotel or apartment building.
>
> . . . .
>
> (2) Criminal trespass in the first degree is a misdemeanor.

HRS § 708-813.

or have control over Maunaihi Terrace, the State maintained that defense counsel did not have a right under HRPP Rule 16 to compel discovery of the condominium. Further, the State argued that the appearance and configuration of the condominium more than a year after the incident rendered Tetu's reasons for requesting access irrelevant. In response, Tetu contended that the passage of time alone does not diminish the importance of accessing the crime scene and that inspecting areas of the property would have likely shown an exit-only door with no signs of forced entry, corroborating that his former wife let him into the condominium.

The ICA issued a memorandum opinion affirming Tetu's conviction. Citing case law from other states, the ICA observed that the court must balance the defendant's need for access to the crime scene with the private party's right to privacy. The ICA noted, "A speculative or conclusory showing, or the failure to explain how the proposed inspection would yield information different from that already disclosed in discovery, is insufficient to overcome the privacy rights of the private party." The ICA held that a defendant must "make a prima facie showing of how the proposed inspection would be relevant and material to his or her defense" and "demonstrate sufficient 'plausible justification' and 'good cause' for the intrusion.'" The ICA ruled that Tetu did not sufficiently explain to the

circuit court how becoming familiar with the scene was relevant to his defense.  Thus, it affirmed the circuit court's order denying Tetu's motion to compel discovery.  The ICA also rejected Tetu's claim that there was insufficient evidence to support his conviction.

This court granted certiorari to address the following questions raised by Tetu: (1) whether the ICA erred in affirming the circuit court's denial of the motion to compel discovery; and (2) whether the ICA erred in finding that Tetu's conviction was supported by substantial evidence.

## II.        STANDARD OF REVIEW

This court reviews questions of constitutional law "by exercising our own independent constitutional judgment based on the facts of the case."  State v. Phua, 135 Hawai'i 504, 511-12, 353 P.3d 1046, 1053-54 (2015); accord State v. Mundon, 121 Hawai'i 339, 349, 219 P.3d 1126, 1136 (2009).  Therefore, questions of constitutional law are reviewed under the right/wrong standard.  Phua, 135 Hawai'i at 512, 353 P.3d at 1054; accord State v. Auld, 136 Hawai'i 244, 250, 361 P.3d 471, 477 (2015).

### III.    DISCUSSION

### A. Motion to Compel Discovery

### 1. Right to Access the Crime Scene Under HRPP Rule 16

The issue of whether a defendant has a right to inspect the crime scene is one of first impression before this court.  A defendant has a right under HRPP Rule 16[10] to discover "material and information within the prosecutor's possession or control."  HRPP Rule 16 (2012).  Because the State was not in possession of Maunaihi Terrace, HRPP Rule 16 does not expressly provide the defense with access to the crime scene.[11]  However,

---

[10]    HRPP Rule 16 provides in relevant part,

(b) Disclosure by the Prosecution.

(1) Disclosure of Matters Within Prosecution's Possession.  The prosecutor shall disclose to the defendant or the defendant's attorney the following material and information within the prosecutor's possession or control:

. . . .

(2) Disclosure of Matters Not Within Prosecution's Possession.  Upon written request of defense counsel and specific designation by defense counsel of material or information which would be discoverable if in the possession or control of the prosecutor and which is in the possession or control of other governmental personnel, the prosecutor shall use diligent good faith efforts to cause such material or information to be made available to defense counsel; and if the prosecutor's efforts are unsuccessful the court shall issue suitable subpoenas or orders to cause such material or information to be made available to defense counsel.

HRPP Rule 16 (2012).

[11]    The State cited Honolulu Police Dep't v. Town, 122 Hawai'i 204, 225 P.3d 646 (2010), in which this court stated that "the discovery right is governed and limited by HRPP Rule 16."  Id. at 214, 225 P.3d at 656.  However, the discovery right under HRPP Rule 16 cannot limit a constitutional

(continued. . .)

14

the HRPP Rule 16 discovery right does not purport to set an outer limit on the court's power to ensure a defendant's constitutional rights.  See United States v. Yoshimura, 831 F. Supp. 799, 805 (D. Haw. 1993) ("In criminal cases discovery is limited to that required by the due process clause of the Constitution, which requires that the Government make available evidence that is material to guilt or punishment."); see also United States v. Richter, 488 F.2d 170, 173 (9th Cir. 1973) (stating that although discovery was not allowed under Federal Rules of Criminal Procedure Rule 16, "the rules themselves do not purport to set outer limits on the power of the court"). Accordingly, we consider whether there is a constitutional right to access a crime scene when the defendant is alleged to have committed the offense on private property.[12]

---

(. . .continued)
right.  See State v. Pond, 118 Hawai'i 452, 481, 193 P.3d 368, 397 (2008) ("The impairment of a defendant's constitutional rights must be considered and weighed against the imposition of a rule excluding evidence.  Failure to do so impermissibly relegates the defendant's constitutional rights to that of rule status."); cf. State v. Calbero, 71 Haw. 115, 124, 785 P.2d 157, 161 (1989) (noting that an evidence rule "cannot override the constitutional rights of the accused").  To the extent that Town indicated that the discovery right is "governed and limited" by HRPP Rule 16, it is overruled.

[12]     Although it is not necessary to determine in this case, HRPP Rule 17 may allow a court to use its subpoena power to grant access to a crime scene.  HRPP Rule 17(b) authorizes a court to issue a subpoena to "command the person to whom it is directed to produce the books, papers, documents or other objects . . . prior to the time when they are to be offered in evidence and may upon their production permit . . . [the objects] to be inspected by the parties and their attorneys."  HRPP Rule 17(b) (2007).  In Commonwealth v. Matis, 915 N.E.2d 212 (Mass. 2006), the Supreme Judicial Court of Massachusetts interpreted Massachusetts Rules of Criminal Procedure Rule 17(a)(2),  which is nearly identical to HRPP Rule 17(b), to authorize the court to compel access to the complainant's home where a sexual assault
(continued. . .)

## 2. Constitutional Right to Access the Crime Scene

### a.    Right to Effective Assistance of Counsel

Article I, section 14 of the Hawai'i Constitution guarantees a defendant in a criminal prosecution the right "to have the assistance of counsel for the accused's defense."[13] Haw. Const. art I, § 14.  The constitutional right to the assistance of counsel is satisfied "only when such assistance is 'effective.'"  State v. Kahalewai, 54 Haw. 28, 30, 501 P.2d 977, 979 (1972) (internal citations omitted).  A counsel's effectiveness is not determined only by what happens at trial, and a court may find a counsel's assistance is ineffective if

_____

(. . .continued)
allegedly occurred.  Id. at 634-35.  "The fact that the object here cannot be physically brought to court by the third party makes no difference.  Its features can be introduced in evidence, and an order for pretrial access under rule 17(a)(2) will expedite the use of such evidence at trial."  Id. at 635.  The Massachusetts court noted that requests under Rule 17(a)(2) must be, inter alia, evidentiary and relevant.  Id.

While HRPP Rule 17 is "not a rule providing for an additional means of discovery," Town, 122 Hawai'i at 214, 225 P.3d at 656 (quoting State v. Pacarro, 61 Haw. 84, 86, 595 P.2d 295, 297 (1979)), the features of a crime scene are routinely admissible into evidence.

[13]     Article I, section 14 of the Hawai'i Constitution provides in relevant part,

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the district wherein the crime shall have been committed, which district shall have been previously ascertained by law, or of such other district to which the prosecution may be removed with the consent of the accused; to be informed of the nature and cause of the accusation; to be confronted with the witnesses against the accused . . . and to have the assistance of counsel for the accused's defense.

Haw. Const. art I, § 14.

counsel failed to conduct adequate pretrial investigations. State v. Aplaca, 74 Haw. 54, 67-71, 67 n.2, 837 P.2d 1298, 1305-07, 1305 n.2 (1992) (noting that "under Hawaii's Constitution, defendants are clearly afforded greater protection of their right to effective assistance of counsel" than under the United States Constitution). Additionally, this court observed in Aplaca that "[i]f counsel does not adequately investigate the underlying facts of a case[,] . . . counsel's performance cannot fall within the 'wide range of reasonable professional assistance.' This is because a decision not to investigate cannot be considered a tactical decision." Id. at 71, 837 P.2d at 1307 (quoting State v. Templin, 805 P.2d 182, 188 (Utah 1990)). The standard for determining the adequacy of counsel's representation is "whether, when viewed as a whole, the assistance provided is 'within the range of competence demanded of attorneys in criminal cases.'" State v. Antone, 62 Haw. 346, 348, 615 P.2d 101, 104 (1980) (quoting Kahalewai, 54 Haw. at 30, 501 P.2d at 979). Thus, a defendant in a criminal case is entitled to counsel who will represent him or her with the competence generally demanded of defense attorneys. See id.

A review of several jurisdictions' codes and performance standards for defense attorneys indicates that in order to assure competent representation, defense counsel should investigate the crime scene and consider seeking access as early

17

as possible, unless circumstances suggest it would be unnecessary in a given case.  The American Bar Association's <u>ABA Standards for Criminal Justice: Prosecution and Defense Function</u> (ABA Standards) states, "Many important rights of a criminal client can be protected and preserved only by prompt legal action."  <u>Id.</u> § 4-3.7(a) (4th ed. 2015).  Thus, "[d]efense counsel should promptly seek to obtain and review all information relevant to the criminal matter, including but not limited to requesting materials from the prosecution."  <u>Id.</u> § 4-3.7(b).  In addition to seeking information from other sources aside from law enforcement, <u>see also</u> <u>id.</u> § 4-4.1(c), counsel for a defendant has a specific duty with regard to investigating a case.  "Defense counsel's investigative efforts should commence promptly and should explore appropriate avenues that reasonably might lead to information relevant to the merits of the matter . . . ."  <u>Id.</u>[14]

---

[14]  "The duty to investigate is not terminated by factors such as the apparent force of the prosecution's evidence, a client's alleged admissions to others of facts suggesting guilt, a client's expressed desire to plead guilty or that there should be no investigation, or statements to defense counsel supporting guilt."  <u>ABA Standards</u> § 4-4.1(b).

"Counsel's investigation should also include evaluation of the prosecution's evidence (including possible re-testing or re-evaluation of physical, forensic, and expert evidence) and consideration of inconsistencies, potential avenues of impeachment of prosecution witnesses, and other possible suspects and alternative theories that the evidence may raise."  <u>Id.</u> § 4-4.1(c).

The commentary to the ABA Standards emphasizes that "without adequate investigation[,] the lawyer is not in a position to make the best use of such mechanisms as cross-examination or impeachment of adverse witnesses at trial."[15]  Am. Bar Ass'n, ABA Standards for Criminal Justice: Prosecution Function and Defense Function § 4-4.1 Commentary, at 183 (3d ed. 1993).  The commentary further states that if there were eyewitnesses to the alleged crime, then "the lawyer needs to know conditions at the scene that may have affected their opportunity as well as their capacity for observation."  Id.

The National Legal Aid and Defender Association's (NLADA) Performance Guidelines for Criminal Defense Representations, which was adopted by the Defender Services Advisory Group in 2015, also recommends early inspection of the crime scene:

> Counsel should consider seeking access to the scene as soon as possible, accompanied by appropriate personnel to assist in documenting conditions.  Counsel should consider seeking access to the scene under circumstances as similar as possible to those existing at the time of the alleged incident (e.g., weather, time of day, and lighting conditions), if different from the initial view of the scene.

Nat'l Legal Aid & Def. Ass'n, NLADA's Performance Guidelines for Criminal Defense Representations § 4.1(b)(6), at 10 (1995).

---

[15]   The commentary for the most recent fourth edition of the ABA Standards, published in 2015, is not yet available.  Thus, the prior edition's commentary for the predecessor standard is referenced.

Chapter 211D of the Massachusetts General Laws establishes the Committee for Public Counsel Services that is responsible for establishing standards and monitoring the performance of counsel "in order to insure competent representation of defendants."  Mass. Gen. Laws ch. 211D, §§ 1, 10 (1990).  In its Performance Standards Governing Representation of Indigents in Criminal Cases, the Committee states, "Counsel should go to the scene of the alleged crime in a timely manner--prior to the pre-trial hearing when necessary-- or prior to an evidentiary hearing or trial.  Counsel should consider obtaining fair and accurate photographs, fair and accurate maps of the area and, where relevant, measurements." Comm. for Pub. Counsel Servs., Criminal: Performance Standards and Complaint Procedures, in Assigned Counsel Manual Policies and Procedures Ch. 4, Part I (IV)(A) (2011).

Similarly, Louisiana Revised Statutes section 15:146 (2014) establishes the Louisiana Public Defender Board that is charged with, inter alia, "[c]reating mandatory qualification standards for public defenders that ensure that the public defender services are provided by competent counsel."  La. Rev. Stat. § 15:148(B)(2) (2008).  The Public Defender Board's Trial Court Performance Standards provides, "Where appropriate, counsel should attempt to view the scene of the alleged offense as soon as possible after counsel is appointed.  This should be

done under circumstances as similar as possible to those existing at the time of the alleged incident." La. Pub. Def. Bd., <u>Louisiana Public Defender Board Trial Court Performance Standards</u> § 717(B)(6), at 14 (2010). Further, in its performance standards for representation in capital cases, the Public Defender Board states that "[c]ounsel should conduct a high quality, independent and exhaustive investigation of all available sources of information utilizing all available tools including live witness interviews, compulsory process, public records law, discovery, [and] scene visits[.]" La. Pub. Def. Bd., <u>Performance Standards for Criminal Defense Representation in Indigent Capital Cases</u> § 1907(B)(1) (2015). The Board elaborates that counsel should take full advantage of the direct observations of relevant locations, noting that

> [c]ounsel should attempt to view the scenes of the alleged offense and other relevant events as soon as possible after counsel is assigned [and] . . . should extensively, precisely, and accurately document the condition of any relevant scene using the most appropriate and effective means, including audio-visual recordings, diagrams, charts, measurements, and descriptive memoranda. The condition of the scenes should always be documented in a manner that will permit counsel to identify and prove the condition of the scenes without personally becoming a witness.

<u>Id.</u> § 1907(B)(8)(f)(i).

The State Bar of Texas in its <u>Performance Guidelines for Non-Capital Criminal Defense Representation</u> likewise states that "[w]hen appropriate, counsel or an investigator should attempt to view the scene of the alleged offense as soon as

possible after counsel is appointed or retained. . . . Counsel should consider the taking of photographs and the creation of diagrams or charts of the actual scene of the offense."  State Bar of Tex., Performance Guidelines for Non-Capital Criminal Defense Representation § 4.1(B)(8) (2011).  Many other states have developed similar performance standards recommending that defense counsel visit the crime scene as appropriate.  See, e.g, N.D. Comm'n on Legal Counsel for Indigents, Minimum Attorney Performance Standards: Criminal Matters § 7.1 (6) ("Where appropriate, counsel should attempt to view the scene of the alleged offense as soon as possible after counsel is appointed. . . .  Counsel should consider the taking of photographs and creation of diagrams or charts of the actual scene of the offense."); accord Va. Indigent Def. Comm'n, Commonwealth of Virginia Standards of Practice for Indigent Defense § 4.1(b)(5) (2015); N.M. Pub. Def. Comm'n & the Law Offices of the Pub. Def., Performance Standards for Criminal Defense Representation § 4.1(b)(7) (2014); S.C. Comm'n on Indigent Def., Performance Standards for Public Defenders and Assigned Counsel (Non-Capital) § 4.1(b)(7) (2013); Ga. Pub. Def. Standards Council, State of Georgia Performance Standards for Criminal Defense Representation in Indigent Criminal Cases § 4.A(B)(f) (2004). Thus, defense counsel's investigation of the crime scene has been widely recognized as an essential task in providing legal

assistance within the range of competence demanded of attorneys in criminal cases.

Some courts have concluded that defense counsel's access to the crime scene implicates a defendant's right to effective assistance of counsel. In affirming a family court's discovery and inspection order, the New Jersey Supreme Court in State in Interest of A.B., 99 A.3d 782, 789, 794 (N.J. 2014), held that a defendant's constitutional right to a fair trial allowed the defendant's counsel to access the residence where a sexual assault had allegedly occurred. The court determined that "[t]he right to the effective assistance of counsel in a criminal proceeding includes the right to conduct a reasonable investigation to prepare a defense," id. at 785, and that a "defense attorney's visit to the scene of the crime . . . might constitute a professional obligation." Id. at 793. The court further noted that "[v]isiting the scene of the crime can be critical in preparing a defense" and "the failure of a defense attorney 'to conduct an investigation of the crime scene' can constitute ineffective assistance of counsel." Id. at 790 (quoting Thomas v. Kuhlman, 255 F. Supp. 2d 99, 112 (E.D.N.Y. 2003)); see also Williams v. Washington, 59 F.3d 673, 680-82 (7th Cir. 1995) (determining that failure to investigate and visit the scene rendered defense counsel's performance deficient and violated the defendant's Sixth Amendment rights); Thomas,

23

255 F. Supp. 2d at 109 ("[I]f properly armed with the easily discoverable facts concerning the layout of the victim's apartment building, counsel would likely have chosen to highlight the implausibility of the prosecution's theory of the crime.").

These standards show that visiting the crime scene is integral to providing an effective defense. Indeed, in this case, defense counsel's reasons for requesting access to Maunaihi Terrace primarily concerned his ability to effectively represent Tetu.[16] Tetu's counsel requested access to the crime scene so that he could cogently present the case to a jury, cross-examine witnesses, and understand Tetu's account of the events. A review of the transcript at trial indicates a disparity between the prosecution's direct examination and the defense counsel's cross-examination of the condominium manager. During direct examination, the prosecutor--who had access to the premises--asked the manager to describe what he saw while the surveillance footage played before the jury. As the manager described the layout of the basement, the prosecutor added to the manager's narrative, asking, "And is there a hallway that

---

[16] Although not mentioned in the motion to compel discovery, Tetu's counsel at oral argument to this court stated that he wanted access to the crime scene "on a personal level" because he "tend[s] to be directionally challenged" and struggles with telling where things are by looking at a map or diagram. See Oral Argument at 10:25-50, State v. Tetu, SCWC-13-0003062 (argued July 2, 2015), http://oaoa.hawaii.gov/jud/oa/15/SCOA_070215_13_3062.mp3.

connects all sides of the basement to the elevators?" The manager responded, "Sorry, yes. There's another hallway just like this right on that side where he just emerged from."

In contrast, Tetu's counsel spent the first part of his cross-examination asking the manager to help him understand the orientation of the utility closets. At one point, Tetu's counsel confused the positioning of the storage closets and apologized to the manager, "It's the same closet? . . . Oh, okay. Sorry. Oh, my mistake. Okay." Thus, the trial record reflects that the specific reasons Tetu's counsel asserted for requesting access to the condominium were substantiated.

The circuit court's reliance on HRE Rule 401 to deny Tetu's motion to compel discovery was misplaced. This rule defines what evidence is relevant and consequently admissible. See HRE Rule 401. It does not contemplate a limit on the defense's ability to discover potentially admissible evidence. See id. As stated by the ABA Standards, defense counsel's investigative efforts "should explore appropriate avenues that reasonably might lead to information relevant to the merits of the matter." ABA Standards § 4-4.1(c). HRE Rule 401 is also inapplicable because several of the reasons Tetu's counsel offered for obtaining access to the property did not indicate a desire to introduce evidence but were related to obtaining an

understanding of the building's layout so that counsel could effectively present the case to the jury.[17]

In sum, under article I, section 14 of the Hawai'i Constitution, a defendant is entitled to the assistance of an attorney whose representation falls within the range of performance demanded of attorneys in criminal cases.  There is a broad consensus across the United States that competent defense counsel should access the crime scene unless, after a careful investigation of the underlying facts of a case, counsel makes a reasonable determination that access is not necessary to provide effective assistance of counsel.[18]  Thus, a defendant's ability to access the crime scene inheres within the right to effective assistance of counsel guaranteed by article I, section 14 of the Hawai'i Constitution.[19]

_____

[17]    The State's argument concerning HRE Rule 403, which allows a court to exclude evidence that will cause "undue delay, waste of time or needless presentation of cumulative evidence," is also not germane.  Tetu's counsel moved to compel discovery, not to admit evidence.  Arguing that the evidence will cause "undue delay, waste of time, or needless presentation of cumulative evidence" prior to the defense even requesting that the evidence be admitted is inapposite.

[18]    The decision not to investigate a crime scene can constitute an error or omission that reflects counsel's lack of skill, judgment, or diligence.  See Aplaca, 74 Haw. at 71, 837 P.2d at 1307 (electing not to investigate without adequate inquiry of the facts is not considered a tactical decision); see also Antone, 62 Haw. at 348-49, 615 P.2d at 104-05 (stating the two-fold standard to establish ineffective assistance of counsel).

[19]    Allowing defense counsel access to the crime scene may impinge on the privacy rights of property owners.  Accordingly, as discussed infra, a court may place appropriate time, place, and manner restrictions on the defendant's access.

### b.    Due Process Right

Article I, section 5 of the Hawai'i Constitution provides, "No person shall be deprived of life, liberty or property without due process of law[.]"[20]  Haw. Const. art. I, § 5.  A primary reason that a defendant is guaranteed effective assistance of counsel is to ensure that the defendant is not denied due process.  State v. Reed, 135 Hawai'i 381, 387, 351 P.3d 1147, 1153 (2015) ("The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the [s]ixth [a]mendment, including the [c]ounsel [c]lause." (alterations in original) (quoting United States v. Gonzalez-Lopez, 548 U.S. 140, 150 (2006))).  Thus, while defense counsel's ability to visit the crime scene is a component of a defendant's right to effective assistance of counsel for the reasons stated above, due process provides a separate guarantee to a fair trial pursuant to which such access may be afforded.  See State v. Kaulia, 128 Hawai'i 479, 487, 291 P.3d 377, 385

---

[20]    Article 1, section 5 of the Hawai'i Constitution provides,

> No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of the person's civil rights or be discriminated against in the exercise thereof because of race, religion, sex or ancestry.

Haw. Const. art. I, § 5.

(2013) ("The due process guarantee of the . . . Hawaii constitution [] serves to protect the right of an accused in a criminal case to a fundamentally fair trial." (alterations in original) (quoting State v. Matafeo, 71 Haw. 183, 185, 787 P.2d 671, 672 (1990))).

On several occasions, this court has stated that "[c]entral to the protections of due process is the right to be accorded a meaningful opportunity to present a complete defense." Id. (quoting Matafeo, 71 Haw. at 185, 787 P.2d at 672). These decisions are consistent with the well-established principle that "all defendants must be provided with the 'basic tool[s] of an adequate defense.'" State v. Scott, 131 Hawai'i 333, 352, 319 P.3d 252, 271 (2013) (quoting Britt v. North Carolina, 404 U.S. 226, 227 (1971)); see also Washington v. Texas, 388 U.S. 14, 19 (1967) (determining that a "fundamental element of due process" is the right to "present the defendant's version of the facts").

> Discovery is at the very foundation of the fact finding process. Faithful adherence to discovery obligations serves the public interest: Discovery provides the basic information which is necessary to expedite trials and plea decisions in an already overburdened court system and promotes fairness in the adversary system.

State v. Valeros, 126 Hawai'i 370, 379, 271 P.3d 665, 674 (2012) (quoting State v. Dowsett, 10 Haw. App. 491, 498, 878 P.2d 739, 743 (1994), overruled on other grounds by State v. Rogan, 91 Hawai'i 405, 423 n.10, 984 P.2d 1231, 1249 n.10 (1999)); see also

28

Ake v. Oklahoma, 470 U.S. 68, 77 (1985) ("[A] criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that [the defendant] has access to the raw materials integral to the building of an effective defense.").

Due process contemplates mutual obligations of the government and the defense as it relates to the discovery process. See State v. Davis, 63 Haw. 191, 195-96, 624 P.2d 376, 379-80 (1981) (stating that discovery under HRPP Rule 12.1 is a "two-way street"). "Although the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded, it does speak to the balance of forces between the accused and his accuser." Wardius v. Oregon, 412 U.S. 470, 474 (1973) (citation omitted).

Other jurisdictions have concluded that a defendant has a right under the due process clause to investigate a crime scene. In Henshaw v. Commonwealth, 451 S.E.2d 415, 416 (Va. Ct. App. 1994), the appellant was denied access to the site of the crime scene located at a private residence, and he was subsequently convicted of voluntary manslaughter. The court concluded that the "due process rights of . . . the Virginia Constitution give a criminal defendant a right to view,

photograph, and take measurements of the crime scene."[21]  Id. at 419.  A similar conclusion was reached in State v. Gonsalves, 661 So. 2d 1281 (Fla. Dist. Ct. App. 1995), in which the court determined that a defendant charged with attempted burglary had a due process right to inspect the crime scene.  Id. at 1282.  Likewise, in State v. Brown, 293 S.E.2d 569 (N.C. 1982), the Supreme Court of North Carolina held that it was "a denial of fundamental fairness and due process for [a] defendant to be denied, under police prosecutorial supervision, a limited inspection of the premises of the crime scene" in a capital case in which the defendant's counsel was denied access to a murder scene.  Id. at 577-78.

Review of the case law thus demonstrates that due process includes the right of the defendant to access the crime scene to obtain the raw materials integral to building an effective defense.  Here, even though surveillance footage was available, it did not show the inside of the closets or how Tetu entered the building.  Tetu's counsel requested access to the property so that he could photograph areas not depicted in the discovery already produced.  A defendant's right to due process

---

[21]  The Henshaw court held that the due process rights of article I, section 8 of the Virginia Constitution give a criminal defendant a right to view, photograph, and take measurements of the crime scene, provided that the defendant makes a showing that a substantial basis exists for claiming that the proposed inspection and observation will enable the defendant to obtain evidence relevant and material to his defense or to be able to meaningfully defend himself.  Henshaw, 451 S.E.2d at 419.

is infringed when defense counsel is forced to rely on materials provided by the government based on what the police or the prosecution deems relevant at a crime scene--that is, what is photographed, what is included in diagrams, or what is depicted in a video and then disclosed in discovery. In an adversarial system, the right to a fair trial may be compromised when the defendant is required to build a defense based upon the State's investigation.

The performance standards and guidelines previously discussed emphasize that counsel should investigate or have adequately considered inspection of the crime scene. A visit to the crime scene may help counsel document and photograph relevant characteristics of the scene, explore avenues of possible defenses, determine if proceeding to trial would be appropriate, enable a cohesive presentation to the factfinder, and understand the defendant's account of the events. The prosecution will generally have access to the crime scene via police investigation or independent prosecutorial inquiry. A defendant is therefore likely to be at a disadvantage to a prosecution that has more information about, and more familiarity with, the crime scene. See Dowsett, 10 Haw. App. at 498, 878 P.2d at 743 ("The ends of justice will best be served by a system of liberal discovery which gives both parties the

maximum possible amount of information with which to prepare their cases . . . ." (quoting Wardius, 412 U.S. at 473)).

Here, Tetu's due process right under the Hawai'i Constitution to access the materials vital to building an effective defense and to have an opportunity similar to the State to obtain information was impaired: first, by the denial of defense counsel's initial request for access to the crime scene, and second, by the prosecutor's visit to the scene despite opposing Tetu's motion on the basis that the defense would not gain anything from an investigation of the scene. As this court has previously stated, "the growth of . . . discovery devices is a salutary development which, by increasing the evidence available to both parties, enhances the fairness of the adversary system." State v. Pond, 118 Hawai'i 452, 464, 193 P.3d 368, 380 (2008) (quoting Wardius, 412 U.S. at 474). In this case, however, the circuit court's decision to not utilize one such discovery device to allow Tetu access to the crime scene diminished the fairness of the adversary system. See id.

In short, under article I, section 5 of the Hawai'i Constitution, a defendant has a due process right to a fair trial. Due process requires that a defendant be given a meaningful opportunity to present a complete defense and that discovery procedures provide the maximum possible amount of information and a level-playing field in the adversarial

process.  Thus, the due process clause of the Hawai'i

Constitution provides a defendant with the right to access the

crime scene in order to secure the promises that a fair trial

affords.

### 3. Privacy Concerns

In Hawai'i, the right to privacy is also a

constitutionally protected right.[22]  Recognition of a defendant's

constitutional right to access the crime scene may intrude upon

the privacy interests of those directly affected by a crime,

property owners, or other occupants of the premises, and an

inspection of the scene may be stressful to an alleged victim.

The drafters of article I, section 6 of the Hawai'i

Constitution envisioned that the interests of the criminal

justice system would, at times, be significant enough to justify

intrusion on one's right to privacy.  See Stand. Comm. Rep. No.

69 in 1 Proceedings of the Constitutional Convention of Hawai'i

of 1978, at 675 (1980) ("[A]t times the interests of national

security, law enforcement, the interest of the State to protect

the lives of citizens or other similar interests will be strong

enough to override the right to privacy.").  The New Jersey

Supreme Court similarly observed in State in Interest of A.B.

---

[22]     Article I, section 6 of the Hawai'i Constitution provides, "The right of the people to privacy is recognized and shall not be infringed without the showing of a compelling state interest."  Haw. Const. art. I, § 6.

that despite the fact that "[p]articipation in the criminal justice process will undoubtedly be a source of inconvenience and anxiety, and will result in some incursion into privacy rights of witnesses[,]" these "adverse consequences are the inevitable price that must be paid to ensure the accused receives a fair trial." 99 A.3d 782, 793 (N.J. 2014). Given these competing interests, a defendant's constitutional right to access and investigate a crime scene is not unlimited and does not provide unfettered access to private property. Rather, the anxiety and inconvenience that governmental intrusion may cause can be largely reduced through the court's application of time, place, and manner restrictions without jeopardizing the defendant's right to effective assistance of counsel and right to a fair trial.

Other jurisdictions that have recognized a defendant's right to investigate the crime scene have employed such restrictions to minimize governmental intrusion on a property owner's privacy rights. The Court of Appeals of Minnesota took this approach in State v. Lee, 461 N.W.2d 245 (Minn. Ct. App. 1990), holding that the trial court abused its discretion in denying the defendant's motion to compel access to a private residence, which was the scene of an alleged murder. Id. at 247. The prosecution opposed the defense's motion in Lee because it was no longer in "possession or control" of the crime

scene and had already provided the defense with photographs, diagrams, and videotapes of the residence. Id. at 246. The appellate court held that "[a] brief inspection of the residence by defense investigators, regulated as to time, place and manner, could be less intrusive upon the victims' family than a defense effort to obtain equivalent information by compulsory process." Id. at 247 (citation omitted).[23] In Commonwealth v. Matis, 915 N.E.2d 212, 215 (Mass. 2006), a case involving the sexual assault of a minor, the court remanded the case to the trial court and specified that the trial court needed to consider the "privacy interests and logistical concerns of the homeowner" and could craft the terms of the order allowing access to the crime scene through time, place, and manner restrictions. The appellate court's instructions on remand provided examples of restrictions that the trial court could apply to protect privacy rights. Id. The Matis court instructed as follows:

> The order [allowing access to the crime scene] should be specific as to scope, and may include, among other things, conditions as to who may have access on behalf of the defense, when that access may occur and for how long, and whether additional persons should be permitted or required to attend to ensure the peaceable nature of the inspection, the integrity of the evidence, and the privacy of matters beyond the scope of the order.

---

[23] Restriction to a single visit will generally be sufficient to address the defense's request to investigate the premises. See State in Interest of A.B., 99 A.3d at 794 (requiring the "giving [of] articulable reasons why the initial inspection was not adequate for investigative purposes").

Id.[24]

In this case, the circuit court could have placed restrictions on defense counsel's access to investigate and photograph the basement area in and around the utility closets.[25] Such appropriate time, place, and manner restrictions would have minimized any infringement on the condominium owners' privacy rights without impairing Tetu's constitutional rights to effective assistance of counsel and a fair trial.[26]

### 4. Relevancy and Materiality Requirement

The concurrence acknowledges that a defendant in Hawai'i has a constitutional due process right to access the crime scene, but it would make the right conditional. In order to exercise the right under the concurrence's proposed test, the defendant would be required to "make a threshold showing" that

---

[24] The Matis court held that the defendant had a constitutional right to investigate the crime scene under the Sixth Amendment to the United States Constitution but required a showing that the crime scene was "evidentiary and relevant" to authorize the use of the court's subpoena power. Matis, 915 N.E.2d at 213-14.

[25] Before moving to compel access to the crime scene, defense counsel may seek access without the aid of the court, i.e., requesting permission through the prosecution or directly from the property owner. However, if access is denied, HRS § 603-21.9 (1993) provides the circuit courts with the authority "[t]o make and award . . . orders . . . for the promotion of justice in matters pending before them," and thus a court may order a complainant or third party to allow access to the crime scene with appropriate restrictions.

[26] At the hearing on Tetu's motion to compel access to the condominium, no one from Maunaihi Terrace was present to represent the condominium's privacy interests. It is assumed that in establishing time, place, and manner restrictions, the property owner or persons with privacy interests will be notified of the request for access. The court may then consider such privacy interests in establishing appropriate restrictions.

"inspection of the [crime] scene will lead to relevant evidence on a material issue." Concurrence at 2, 8.

In jurisdictions that have required a defendant to satisfy a relevancy and materiality test (or some alternative standard) to justify access to the crime scene, a primary concern has been the right to privacy of complainants or third parties.[27] This concern can be readily addressed by application of time, place, and manner restrictions imposed by a court to protect the privacy interests of property owners or occupants without the imposition of an evidentiary threshold test.[28] There

_____

[27] See, e.g., Bullen v. Superior Court of Sacramento Cty., 251 Cal. Rptr. 32, 35 (Cal. Ct. App. 1988) ("Resolution of this issue implicates competing fundamental interests involving petitioner's right to privacy in her own home and defendant's right to a fair trial and a defense informed by all relevant and reasonably accessible information."); State in Interest of A.B., 99 A.3d 782, 789 (N.J. 2014) ("The issue presents a balancing of the right of the accused to a fair trial and the right of an alleged victim and her family to privacy in their home."); People v. Nicholas, 599 N.Y.S.2d 779, 782 (N.Y. App. Div. 1993) ("Unless defense counsel can make a prima facie showing how his proposed inspection and observation would be relevant and material to his defense, the defendant's right to prepare his defense cannot outweigh the victim's constitutional right to privacy."); Henshaw v. Commonwealth, 451 S.E.2d 415, 420 (Va. Ct. App. 1994) ("If an accused establishes that inspecting, photographing, or measuring the crime scene is relevant and material, he is entitled to access, subject to such reasonable limitations and restrictions as the trial judge may impose, unless due to special circumstances the private citizen's constitutional right to privacy outweighs the accused's right to view or inspect the premises."); State v. Muscari, 807 A.2d 407, 418 (Vt. 2002) (holding that an occupant's right to privacy must be balanced with a defendant's need to access the crime scene "by requiring a defendant to make some showing that the requested intrusion is relevant and material to the defense").

[28] The need for a defense counsel to understand the crime scene's layout and to explore all possible defenses does not vary based on whether the crime occurred on public or private property. Consequently, under a relevancy and materiality test, the need to persuade a court to allow crime scene access unfairly burdens defendants accused of a crime on private rather than on public property. All defendants under the Hawaiʻi and United States Constitutions are presumed to be innocent, and the ability to prepare a

(continued. . .)

may be rare cases where it is demonstrated that such restrictions are inadequate to protect an individual's privacy rights and that an intrusion upon these privacy rights outweighs the defendant's rights to due process and effective assistance of counsel. However, a court's broad authority to circumscribe the scope of access--including, for example, prescribing the physical area of the inspection, setting the time frame and other conditions of the visit, and specifying the persons to be present--will provide the requisite protection of privacy rights in virtually all cases.

Additionally, requiring a defendant to demonstrate that access to the crime scene "will lead" to relevant evidence on a material issue undermines the defendant's constitutional rights to effective assistance of counsel and to a fair trial. The time necessary for defense counsel to obtain discovery in order to establish that accessing the crime scene would lead to relevant evidence on a material issue conflicts with the previously cited professional standards that defense counsel should access the scene without delay to inspect it, take

---

(. . .continued)
defense should not depend on the location of the offense charged. See In re Winship, 397 U.S. 358, 363 (1970) (The reasonable-doubt standard "provides concrete substance for the presumption of innocence--that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law'" (quoting Coffin v. United States, 156 U.S. 432, 453 (1895))).

measurements, and record relevant conditions.[29] The defendant's inability to make a threshold showing of relevancy and materiality to justify inspecting the crime scene at an early point in the proceedings[30] may be the result of a delay in the State's required disclosure of discovery under HRPP Rule 16 because of uncompleted investigative reports, pending test results, or even administrative backlog.

Further, the reasons put forward by the defense to access the crime scene are likely to be challenged by the State as to whether they demonstrate that access "will lead to relevant evidence on a material issue." Concurrence at 2 (emphasis added). That is, counsel for the State, who will generally have ready access to the crime scene, may contend that opposing counsel should not be granted access because of

---

[29] Requiring the defense to show that investigation of the crime scene will lead to relevant and material evidence may, in certain instances, infringe on the attorney-client privilege. The attorney-client privilege protects all "'confidential communication made for the purpose of facilitating the rendition of professional legal services' between appropriate parties." Save Sunset Beach Coalition v. City & Cty. of Honolulu, 102 Hawai'i 465, 484-85, 78 P.3d 1, 20-21 (2003) (quoting HRE Rule 503(b)). Satisfying a relevancy and materiality test may inferentially reveal the contents of a privileged communication from the defendant.

[30] A relevancy and materiality requirement may also create an anomalous result based on the timing of a defense counsel's request to compel discovery. If defense counsel moves to compel access when the police or the State is in "possession or control" of a crime scene, a defendant would appear to have an automatic right under HRPP Rule 16 to investigate the crime scene. See State v. Townsend, 7 Haw. App. 560, 563, 784 P.2d 881, 883 (1989). Requiring a defendant to satisfy a higher burden to exercise his or her constitutional right to access the crime scene solely because of the timing of the request may "impermissibly relegate[] the defendant's constitutional rights to that of rule status." State v. Pond, 118 Hawai'i 452, 481, 193 P.3d 368, 397 (2008).

relevance, passage of time, or cumulativeness of evidence--which were precisely the grounds of the State's objections in this case. If a trial court is required to determine whether access to a crime scene would lead to relevant evidence not previously disclosed on a material issue, the court would need to be cognizant of the contents of all discovery previously provided by the State, any other materials obtained by the defense's investigation, and the possible defenses to be asserted at trial.[31]

Although the inherent difficulty of such a judicial calculation is plainly evident, the concurrence suggests that its proposed threshold burden is necessary in part to counter requests for access that have no "legitimate purpose." Concurrence at 5. To the extent that the concurrence portends that counsel will submit frivolous or illegitimate requests for access to the scene with the intent to intimidate, harass, or abuse private citizens, such requests for access would require defense counsel to knowingly violate multiple provisions of the Hawai'i Rules of Professional Conduct (HRPC). See HRPC Rule

---

[31]     Requiring counsel to definitively show that access "will" lead to relevant evidence on a material issue would also make no accommodation for counsel to inspect the crime scene for general investigatory purposes or because counsel believes the inspection itself may provide a basis for a defense. In this likely scenario, the very information needed to make a showing that access to the crime scene would yield relevant and material evidence would remain undiscovered because it would only be accessible by inspecting the crime scene in the first place.

3.4(f) (2014) (prohibiting a lawyer from "mak[ing] a frivolous discovery request"); HRPC Rule 3.1 (2014) (prohibiting a lawyer from "bring[ing] or defend[ing] a proceeding, or assert[ing] or controvert[ing] an issue therein, unless there is a basis for doing so that is not frivolous").  Further, the trial court has "inherent equity, supervisory, and administrative powers" to "curb abuses and promote a fair process."  Richardson v. Sport Shinko (Waikiki Corp.), 76 Hawai'i 494, 507, 880 P.2d 169, 182 (1994); Kaina v. Gellman, 119 Hawai'i 324, 330, 197 P.3d 776, 782 (App. 2008) (noting that HRS §§ 603-21.9(1) and (6)[32] are the "legislative restatement of the inherent powers doctrine").[33]

---

[32]  HRS § 603-21.9 reads in relevant part:

The several circuit courts shall have power:

> (1) To make and issue all orders and writs necessary or appropriate in aid of their original or appellate jurisdiction;
>
> . . . .
>
> (6) To make and award such judgments, decrees, orders, and mandates, issue such executions and other processes, and do such other acts and take such other steps as may be necessary to carry into full effect the powers which are or shall be given to them by law or for the promotion of justice in matters pending before them.

HRS § 603-21.9(1), (6) (1993).

[33]  See also State v. Mattson, 122 Hawai'i 312, 342 n.6, 226 P.3d 482, 512 n.6 (2010) (noting that this court could invoke its inherent supervisory authority to prohibit a broad category of impermissible prosecutorial comments even when not all subsets of such comments were raised on appeal); State v. Jess, 117 Hawai'i 381, 411, 184 P.3d 133, 163 (2008) (circuit court's inherent authority includes the power to reform sentencing statute to comport with Hawai'i Constitution and re-empanel jury to make factual findings for sentencing); State v. Pattioay, 78 Hawai'i 445, 468 n.28, 896 P.2d 911, 924

(continued. . .)

Therefore, trial courts are indeed empowered with the tools to curb the concurrence's hypothetical requests of counsel for access that have no legitimate purpose, even assuming the unlikely fact that such requests would be submitted in direct violation of the Hawai'i Rules of Professional Conduct.[34] Concurrence at 5.

The concurrence also maintains that, under the proposed relevancy and materiality test, "in the vast majority of cases, a defendant should easily be able to" exercise his or her constitutional right to access the crime scene. Concurrence at 5. However, as described above, there are numerous reasons why this prediction is dubious. In fact, it is likely that defense counsel would frequently be denied the opportunity to investigate the scene of the crime and thus be prevented from fulfilling professional standards. This case is a prime example. Defense counsel provided the following reasons for seeking access to the condominium premises: (1) to make best use of cross-examination and impeachment of witnesses at trial; (2)

---

(. . .continued)
n.28 (1995) (circuit court's inherent authority includes power to exclude evidence obtained in violation of federal statute relating to military and civilian law enforcement because such action is "reasonably necessary to vindicate the court's authority").

[34] The regulations imposed by the HRPC, the court's inherent authority to deny illegitimate requests for access, and the limitations imposed by use of time, place, and manner restrictions evince that, contrary to the concurrence's characterization, a defendant's access to the crime scene is not "absolute." Concurrence at 8.

to understand the account of his client; (3) to take photographs of areas not shown in the discovery that "may be significant to the defense"; and (4) to coherently present the case to a jury. The circuit court determined that Tetu's counsel had presented "no real plausible justification" for access to the crime scene and that the request for access was speculative "with a hope to turn up something." Similarly, the ICA concluded that Tetu's reasons did not satisfy its requirement that counsel "make a prima facie showing of how the proposed inspection would be relevant and material to [his] defense." These court rulings indicate that Tetu would not have satisfied the concurrence's threshold test that "inspection of the crime scene would lead to relevant evidence on a material issue,"[35] despite the fact that the reasons provided by defense counsel coincide with numerous performance standards established by the American Bar Association, state jurisdictions, and other legal professional standards organizations.[36]

---

[35] In concluding otherwise, the concurrence states that inspection of the crime scene would have revealed that the fire-exit door, which was "exit only," had no signs of forced entry and would have corroborated Tetu's account that he could have only entered the premises with his former wife's aid. Concurrence at 6-7. However, this argument was not made before the circuit court as the ICA noted in its memorandum opinion. The other reasons relied upon by the concurrence are generally applicable in all criminal cases.

[36] See, e.g., Va. Indigent Def. Comm'n, Commonwealth of Virginia Standards of Practice for Indigent Defense § 7.1 (b)(5) (2015) (trial preparation should include consideration of "[o]btaining photographs and preparing charts, maps, diagrams, or other visual aids of all scenes, persons, objects, or information which may assist the fact finder in

(continued. . .)

While the reasons that Tetu's counsel provided are inherent to providing effective assistance of counsel and apply in nearly all criminal cases, they did not demonstrate that access to the scene would satisfy the concurrence's test that it "will lead to relevant evidence on a material issue."  This case thus manifests the fundamental point that the duties required of defense counsel by virtue of the obligation to render effective assistance are not limited to seeking relevant evidence on a material issue, and, in fact, encompass a range of litigation efforts that are fundamental to an effective defense--yet do not solely involve pursuing such evidence.[37]  Rather, as established by the professional standards for defense counsel, a meaningful

---

(. . .continued)
understanding the defense . . . "); id. at § 8.2(g) ("Counsel should attempt to view and photograph the scene of the alleged offense."); Nat'l Legal Aid & Def. Ass'n, NLADA's Performance Guidelines for Criminal Defense Representations § 4.1(b)(6), at 10 (1995) ("Counsel should consider seeking access to the scene under circumstances as similar as possible to those existing at the time of the alleged incident."); Am. Bar Ass'n, ABA Standards for Criminal Justice: Prosecution Function and Defense Function § 4-4.1(b) Commentary, at 183 (3d ed. 1993) ("Without adequate investigation[,] the lawyer is not in a position to make the best use of such mechanisms as cross-examination or impeachment of adverse witnesses at trial," and where there are eyewitnesses, "[t]he lawyer needs to know conditions at the scene that may have affected their opportunity as well as their capacity for observation.").

[37]     For example, the record in this case demonstrates that defense counsel's concerns regarding cross-examination of witnesses at trial was well-founded.  A review of the trial transcript indicates that defense counsel, unlike the prosecution, struggled to cross-examine the condominium manager regarding the layout of the basement.  As any seasoned litigator knows, there is no substitute to viewing the crime scene in person.  Had defense counsel been permitted to inspect and familiarize himself with the condominium basement, counsel likely would have been able to make "be[tter] use" of cross-examination.  Am. Bar Ass'n, supra note 36, at 183.

opportunity to present a complete defense secures allowance for counsel to timely inspect and investigate the crime scene in order to provide effective assistance.  See State v. Kaulia, 128 Hawai'i 479, 487, 291 P.3d 377, 385 (2013) ("Central to the protections of due process is the right to be accorded a meaningful opportunity to present a complete defense." (quoting State v. Matafeo, 71 Haw. 183, 185, 787 P.2d 671, 672 (1990)). Requiring counsel to satisfy a court that granting access to the crime scene will lead to relevant evidence on a material issue forces a defendant to justify the exercise of the rights given by our constitution to present an effective defense and to receive a fair trial.

### 5. Harmless Error

The circuit court erred in not allowing Tetu's counsel to inspect and photograph the crime scene, a private condominium building, subject to appropriate restrictions that would have properly considered the condominium owners' privacy rights. However, a violation of a constitutional right is subject to the harmless-beyond-a-reasonable-doubt standard.  See State v. Peseti, 101 Hawai'i 172, 178, 65 P.3d 119, 125 (2003) (noting that a violation of the constitutional right to confront witnesses is subject to the harmless beyond a reasonable doubt standard).  This standard requires a court to "examine the record and determine whether there is a reasonable possibility

45

that the error complained of might have contributed to the conviction."  Id. (quoting State v. Balisbisana, 83 Hawai'i 109, 113-14, 924 P.2d 1215, 1219-20 (1996)); see also State v. Aplaca, 96 Hawai'i 17, 25, 25 P.3d 792, 800 (2001) ("This court applies the harmless error doctrine to errors that . . . implicate an accused's constitutional rights.").  In assessing whether an error is harmless, "[a] crucial if not determinative consideration . . . is the strength of the prosecution's case on the defendant's guilt."  State v. Fukusaku, 85 Hawai'i 462, 482-83, 946 P.2d 32, 52-53 (1997) (quoting State v. Pokini, 55 Haw. 640, 645, 526 P.2d 94, 101 (1974)).

Here, the evidence presented against Tetu at trial was compelling.  The jury observed surveillance footage that showed Tetu breaking into two storage closets with a tool and using his jacket to wipe the door knobs.  Tetu testified that he used a piece of wire to open the locked closets.  The jury also observed in the footage Tetu leaving the closets carrying a garbage bag of items with a flashlight in his mouth.  The condominium manager testified that he had checked the utility closets a few days before the incident and that on the day after the incident, an electric grinder and several emergency lights and batteries were missing.  The manager further testified that the closets were always locked and only individuals with keys had access to the closets.  Finally, Tetu's testimony that the

bag contained his former wife's clothing, instead of stolen property, was wholly contradicted by the testimony of his former wife.

In light of the evidence adduced at trial, the trial court's error in denying access to the crime scene in this case was harmless beyond a reasonable doubt.

## B. Sufficiency of the Evidence

This court will "not overturn a conviction by a jury if 'viewing the evidence in the light most favorable to the [prosecution], there is substantial evidence to support the conclusion of the trier of fact.'" State v. Matavale, 115 Hawai'i 149, 158, 166 P.3d 322, 331 (2007) (alteration in original) (quoting State v. Moniz, 92 Hawai'i 472, 476, 992 P.2d 741, 744 (App. 1999)). Substantial evidence is "credible evidence which is of sufficient quality and probative value to enable [a person] of reasonable caution to support a conclusion." Id. at 158, 166 P.3d at 331 (alteration in original) (quoting State v. Batson, 73 Haw. 236, 248-49, 831 P.2d 924, 931 (1992)). Further, when considering the legal sufficiency of evidence to support a conviction, such "evidence adduced in the trial court must be considered in the strongest light for the prosecution." Id. at 157, 166 P.3d at 330. It is not the role of the appellate court to weigh credibility or

resolve conflicting evidence.  State v. Wallace, 80 Hawai'i 382, 418, 910 P.2d 695, 731 (1996).

A person commits burglary in the second degree if the person "intentionally enters or remains unlawfully in a building with intent to commit therein a crime against a person or against property rights."  HRS § 708-811(1).  Because Tetu admitted that he was the person depicted in the surveillance footage, the question before the jury concerned Tetu's intent when entering or while remaining at Maunaihi Terrace.  Although Tetu argues that he lacked the intent to commit burglary, in viewing the evidence in the most favorable light to the State, the evidence demonstrating that the circuit court's error was harmless beyond a reasonable doubt also establishes substantial evidence to support Tetu's conviction.

### IV.    CONCLUSION

A defendant's right to due process under article I, section 5 and the right to effective assistance of counsel under article I, section 14 of the Hawai'i Constitution independently provide a defendant with the right to access a crime scene. When the crime scene is located on private property, the court should impose time, place, and manner restrictions to protect the privacy interests of those who may be affected by the intrusion.  The court's authority to employ such restrictions to address the specific circumstances in each case reflects a

careful balance between personal privacy, due process, and the effective assistance of counsel and assures protection of these constitutional rights.

In this case, although Tetu was wrongly denied access to the crime scene, the error was harmless beyond a reasonable doubt.  Therefore, the judgment on appeal of the ICA is affirmed for the reasons stated herein.

| | |
|---|---|
| Stuart N. Fujioka<br>for petitioner | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| Donn Fudo<br>for respondent | /s/ Michael D. Wilson |

