Electronically Filed
Supreme Court
SCWC-16-0000673
10-APR-2019
09:21 AM

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellee,

vs.

RINALDO J. TORRES, JR.,
Petitioner/Defendant-Appellant.

SCWC-16-0000673

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000673; CR. NO. 14-1-1376)

APRIL 10, 2019

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY POLLACK, J.

Under our precedents, a defendant in a criminal case relinquishes fundamental constitutional rights only when the rights are knowingly, intelligently, and voluntarily waived. To protect against the wrongful deprivation of these important rights, we require trial courts to conduct on-the-record colloquies prior to accepting such waivers, thereby ensuring that defendants understand the nature and consequences of their

decisions and make their choices freely.  We now reaffirm that the colloquy must be conducted so as to demonstrate that the waiver is a product of the defendant's free will, undertaken in the absence of duress or other undue influence.

Our precedents also firmly establish that a defendant's right to testify is of equal constitutional stature to the defendant's corresponding right to refrain from testifying.  Despite our recognition of this symmetry, our current procedures require that a trial court engage a defendant in an on-the-record colloquy only when the defendant waives the right to testify--and not when the defendant waives the reciprocal right not to testify.

We hold that, because the two constitutional rights are of equal importance, they should be afforded equal levels of protection.  Accordingly, trial courts must engage the defendant in an on-the-record colloquy regarding the right to testify and to not testify when either right is waived, effectively making such a colloquy necessary in every trial.  Because we apply our holding only prospectively, however, and the circumstances and strength of the evidence in this case render any error on the part of the trial court harmless beyond a reasonable doubt, we affirm the defendant's convictions.

## I. FACTS AND PROCEDURAL BACKGROUND

### A. Pretrial

On August 27, 2014, a grand jury of the Circuit Court of the First Circuit (circuit court) indicted Rinaldo J. Torres, Jr. on one count of robbery in the first degree in violation of Hawaii Revised Statutes (HRS) § 708-840(1)(b)(i) and/or 708-840(1)(b)(ii)[1] and one count of terroristic threatening in the first degree in violation of HRS § 707-716(1)(e).[2] At his arraignment, Torres entered pleas of not guilty.

---

[1] HRS § 708-840(1)(b) (2014) provides the following:

(1) A person commits the offense of robbery in the first degree if, in the course of committing theft or non-consensual taking of a motor vehicle:

. . . .

(b) The person is armed with a dangerous instrument or a simulated firearm and:

(i) The person uses force against the person of anyone present with intent to overcome that person's physical resistance or physical power of resistance; or

(ii) The person threatens the imminent use of force against the person of anyone present with intent to compel acquiescence to the taking of or escaping with the property[.]

[2] HRS § 707-716 (2014) provides in relevant part the following:

(1) A person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening:

. . . .

(e) With the use of a dangerous instrument or a simulated firearm.

3

Five days before trial was scheduled to begin, Torres submitted a Waiver of Indictment/Trial by Jury form to the court.  The form stated "I, the above named defendant, charged with violation of the indicated statute have been advised of my rights," and it contained a box for the waiver of the right to an indictment and a box for the waiver of the right to a jury trial.  Torres checked the box that said "I waive my right to trial by jury and consent to a trial by the COURT without a jury" and signed the bottom of the form.

The trial began on March 23, 2015.[3]  Before opening statements, the court indicated that defense counsel had communicated Torres's desire to waive his right to a jury trial. The circuit court engaged in the following colloquy with Torres:

> THE COURT: Your lawyer has provided the Court with a waiver of trial by jury form.  And it appears to have your signature.  Is this your signature?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Did you go over this form with your lawyer before you signed it?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And did you read and understand it before you signed it?
>
> THE DEFENDANT: I believe I did.  Yeah.
>
> THE COURT: Do you have any questions about this form?
>
> THE DEFENDANT: No.
>
> . . .

---

[3]     The Honorable Dexter D. Del Rosario presided.

THE COURT: Knowing the[] penalties [of robbery in the first degree and terroristic threatening in the first degree], do you still want to go by way of a bench trial? That is, a waiver of your right to a jury trial?

THE DEFENDANT: Yes. I feel that you will be fair in weighing the evidence against me. Yes, Your Honor.

THE COURT: Do you understand that you do have a right to a jury trial in this case?

THE DEFENDANT: Yes, I do. Thank you.

THE COURT: And you understand that in a jury trial, you and your lawyer may participate in selecting twelve citizens who would serve as jurors in this case and decide whether you are guilty or not guilty of these crimes?

THE DEFENDANT: Yes, sir.

THE COURT: And you understand that you and your lawyer, or you through your lawyer, will be able to ask questions of the jurors to determine whether they can be fair and impartial? Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And you understand that your lawyer will be given three peremptory challenges. In other words, you and your lawyer will be permitted to excuse up to three jurors, without giving any reason for it. . . . Do you understand that?

THE DEFENDANT: Yes. I understand that.

THE COURT: And you understand that before you can be found guilty of these crimes, all twelve jurors must agree that you are guilty. In other words, their verdict must be unanimous.

THE DEFENDANT: Yes. I understand that.

THE COURT: And you understand that by giving up your right to a jury trial, you will be giving up all these rights?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you also understand that by giving up your right to a jury trial, I--that is the judge--will decide whether you are guilty or not guilty of these crimes?

THE DEFENDANT: Yes, Your Honor.

. . . .

THE COURT: Do you have any questions about what I have told you?

THE DEFENDANT: No. Still we still go through the same procedures as what my defense is and all that, right?

THE COURT: Yes. We will have a trial. The only difference is between a jury--

THE DEFENDANT: We won't have a jury.

THE COURT: Yes.

THE DEFENDANT: Okay. I understand that.

THE COURT: I will decide.

THE DEFENDANT: Right, Your Honor. Yes. I requested that.

. . .

THE COURT: Do you want to waive your right to a jury trial?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. The Court finds that Mr. Torres has voluntarily waived his right to a jury trial. Also have done so knowingly and intelligently.

## B. Trial

Prior to trial commencing, the court did not advise Torres of his right to testify or of his right not to testify.

### 1. State's Case

The State first called Satoshi Tokunaga who testified that he was visiting from Japan in the summer of 2014 when the incident with Torres occurred. He explained that on July 18, 2014, while he was sitting on a bench in the Waikiki Shopping Plaza, a stranger approached him with a gun and pointed it at his head. Tokunaga testified that the man hit him, he hit the man back, and the man unsuccessfully attempted to take his bag.

During the incident, Tokunaga said, they were hitting each other and eventually the individual's gun fell to the floor and both of them tried to grab it. Tokunaga stated that after the man retrieved the gun, the man walked toward the nearby escalator, security arrived, and the incident ended.[4]

Tokunaga testified that after the incident, he spoke with detectives and identified a person in a photo lineup that "show[ed] the face of the suspect" and that looked like the stranger who had approached him. Tokunaga was also shown a series of videos during his testimony that depicted the events as he had described. Tokunaga identified the person in the videos as the person that approached him. Tokunaga then made an in-court identification of Torres as the person that assaulted him.

Elliot Aki, a security guard who responded to the incident at the shopping plaza, testified that when he arrived at the scene he saw one person "breaking away" from a group of people and starting to leave. He explained that he began pursuing this person because "this individual might have been the instigator" of the incident. Aki said that the pursuit continued to the escalator and when he came close, the person "pivoted towards his right and pulled out this black object"

---

[4] The magazine from a pellet gun was recovered from the scene, and a photograph of it was entered into evidence.

that "looked like a firearm" and pointed it at him. Aki explained that he then turned around and ran back up the escalator and warned others in the area that the person on the escalator had a gun. Aki said that he observed the individual continue down the escalator in a rushed manner with "his hands in the air with the weapon." Aki was shown the security camera video of the incident on the escalator, and he described the events again as the video was being played.

## 2. Defense's Case

Prior to Torres being called as a witness, the court did not engage in a colloquy with Torres regarding his right to testify or his right not to testify.

Torres testified that he was at the shopping plaza on July 18, 2014, and that he approached Tokunaga and offered to sell him marijuana. Torres explained that when he opened the bag of marijuana in front of Tokunaga's face, Tokunaga grabbed him and punched him in the eye.[5] After he fell to the ground and stood back up, an altercation ensued, Torres testified. Torres admitted that he had a pellet gun on the day of the incident but said that it was in his bag and he never held it in the confrontation with Tokunaga. He testified that the pellet gun likely fell out of his bag when he fell to the floor. Torres

---

[5] Tokunaga denied that Torres ever offered to sell him marijuana.

8

also stated that the pellet gun's magazine, which was found on the ground at the scene, was never loaded in the pellet gun.

When security arrived, Torres testified that he picked up the pellet gun and his bag, and he walked away from the scene still holding his pellet gun at his side as he approached the escalator. Torres testified that while he was on the escalator, he tried to put the pellet gun in his pocket but it fell to the ground as he turned to look behind him. Torres acknowledged that the person in the video "look[ed] like [him]" and that he had the pellet gun out while going down the escalator, but he denied that he pointed it at anyone. After Torres's testimony, the defense rested.

### 3. Verdict and Sentencing

The circuit court found Torres guilty of both counts.[6] Torres was sentenced to 20 years imprisonment for the robbery charge and 5 years imprisonment for the terroristic threatening charge; the sentences were imposed concurrently with each other. Torres filed a timely Notice of Appeal.

### II. ICA PROCEEDINGS

On appeal, Torres argued that the circuit court erred by failing to advise him of his right not to testify before the trial. Torres contended that this alone was reversible error

---

[6] The court found Tokunaga's testimony credible and Torres's testimony not credible.

and that there is no requirement that the defendant show he was prejudiced by the lack of a colloquy. But even if he was required to show prejudice, Torres asserted, he was prejudiced because the court's error and his subsequent testimony eliminated the defense of proof of identity.

Torres also asserted that the circuit court erroneously determined that his waiver of jury trial was voluntary. The colloquy was deficient, Torres maintained, because the court did not ask him whether the decision to waive a jury trial was his own decision or made under the influence or duress of another person. Torres concluded that the failure of the circuit court to ask this specific question meant that the court had no basis for its finding that the waiver was voluntary.[7]

In its decision, the Intermediate Court of Appeals (ICA) held that when a trial court fails to provide a pretrial advisement, the defendant must show that the lack of the advisement caused actual prejudice. The ICA reasoned that Torres's testimony was essential to his defense of self-defense, and because he was the only witness that the defense called at trial, Torres would have been required to testify even if he was

---

[7] Torres also argued on appeal that the circuit court erred in denying the defense's motion for judgment of acquittal and that his trial attorney provided ineffective assistance of counsel. Neither issue is raised before this court, and thus they are not addressed.

given a pretrial advisement.  Thus, the ICA concluded that Torres was not prejudiced by the lack of a pretrial advisement.

The ICA further held that the circuit court did not err in finding that Torres's waiver of his right to a jury trial was voluntary.  The ICA explained that not only did Torres sign a Waiver of Trial by Jury form, but Torres also participated in an "extensive dialogue" with the circuit court in which he stated "I feel that you will be fair in weighing the evidence against me."  The ICA concluded that under the totality of the circumstances test, these facts demonstrated that Torres waived his right to a jury trial knowingly and voluntarily. Thereafter, Torres's application for certiorari was accepted by this court.

### III. STANDARD OF REVIEW

The validity of a defendant's waiver of constitutional rights in a criminal case is a question of law under the state and federal constitutions. See State v. Celestine, 142 Hawai'i 165, 169, 415 P.3d 907, 911 (2018); State v. Sprattling, 99 Hawai'i 312, 316, 55 P.3d 276, 280 (2002).  "We answer questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case.  Thus, we review questions of constitutional law under the right/wrong standard."  Sprattling, 99 Hawai'i at 316, 55 P.3d at 280

11

(quoting State v. Hanapi, 89 Hawai'i 177, 182, 970 P.2d 485, 490 (1998)).

## IV. DISCUSSION

### A. Torres Voluntarily Waived the Right to a Jury Trial

It is well established that Hawai'i law recognizes the right to a jury trial as a fundamental right.[8] State v. Ibuos, 75 Haw. 118, 120, 857 P.2d 576, 577 (1993). This right cannot be relinquished absent a knowing, intelligent, and voluntary waiver. State v. Friedman, 93 Hawai'i 63, 68, 996 P.2d 268, 273 (2000). A waiver is knowing and intelligent when it is made with "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). A waiver is voluntary when "it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Id.

When determining whether the waiver of a jury trial is knowing, intelligent, and voluntary, we have "advised the trial courts to conduct Duarte-Higareda's suggested colloquy[.]"[9]

---

[8] Defendants charged with a non-petty crime have a constitutional right "to a speedy and public trial by an impartial jury of the district wherein the crime shall have been committed[.]" Haw. Const. art. I, § 14; see also State v. Wilson, 75 Haw. 68, 73, 856 P.2d 1240, 1243 (1993) ("[A] defendant charged with a petty crime does not have a constitutional right to a jury trial.").

[9] Notwithstanding this advisement, "we have rejected the argument that such a colloquy is required in every case." Gomez-Lobato, 130 Hawai'i at 470, 312 P.3d at 902.

State v. Gomez-Lobato, 130 Hawaiʻi 465, 470, 312 P.3d 897, 902 (2013) (citing Friedman, 93 Hawaiʻi at 69, 996 P.2d at 274).  In a Duarte-Higareda colloquy, the trial court informs the defendant "that (1) twelve members of the community compose a jury, (2) the defendant may take part in jury selection, (3) a jury verdict must be unanimous, and (4) the court alone decides guilt or innocence if the defendant waives a jury trial." United States v. Duarte-Higareda, 113 F.3d 1000, 1002 (9th Cir. 1997).  Here, the circuit court engaged Torres in a colloquy that essentially tracked the suggested Duarte-Higareda model.  However, the Duarte-Higareda colloquy does not address whether a waiver is voluntary.

Torres argues that the circuit court was required to specifically ask him whether the waiver was his own decision or "based upon duress or the influence of another person or other factors that might cause him to waive his rights against his will."  Without conducting this inquiry, Torres asserts, the circuit court had no basis for its finding that the jury waiver was voluntary.

This court has evaluated the voluntariness requirement of a waiver of a jury trial on several occasions.  In Friedman, the trial court asked the defendant during the colloquy, "Is your decision to waive your right to jury trial something you thought about and decided to do yourself voluntarily[?]" and the

13

defendant answered, "Yes." 93 Hawaiʻi at 66, 996 P.2d at 271. We found the defendant's waiver to be voluntary because the defendant "affirmatively indicated to the trial court that his waiver of the right to a jury trial was voluntary and a result of his own reflection." Id. at 70, 996 P.2d at 275.

In State v. Baker, the defendant signed his initials next to each paragraph on a form indicating that he intended to waive a jury trial except the paragraph stating that his waiver was not induced by promises or threats. 132 Hawaiʻi 1, 3-4, 319 P.3d 1009, 1011-12 (2014). The trial court then engaged the defendant in a brief colloquy about the form. Id. at 4, 319 P.3d at 1012. On appeal, this court explained that even when the defendant signs a written jury trial waiver form, the trial court is still required to conduct an oral colloquy to establish the validity of the waiver. Id. at 6, 319 P.3d at 1014. We concluded that the defendant's waiver of jury trial was not voluntary because the defendant failed to initial next to the paragraph on the waiver form that addressed voluntariness and "none of the court's questions were directed towards determining the voluntariness of [the defendant's] waiver." Id. at 7, 319 P.3d at 1015.

This court also evaluated voluntariness in the context of the right to testify in State v. Eduwensuyi, 141 Hawaiʻi 328,

14

409 P.3d 732 (2018). In that case, the trial court conducted a colloquy pursuant to Tachibana v. State, 79 Hawai'i 226, 237, 900 P.2d 1293, 1304 (1995), informing the defendant of the right to testify and the right not to testify. Eduwensuyi, 141 Hawai'i at 330-31, 409 P.3d at 734-35. We held that the Tachibana colloquy was deficient because the trial court failed to inform the defendant that no one could prevent him from testifying. Id. at 333-34, 409 P.3d at 737-38. This advisement "is critical," explained the Eduwensuyi court, because it is "the only Tachibana advisement that emphasizes that the waiver of the right to testify must be voluntary[.]" Id. at 334, 409 P.3d at 738.

In State v. Solomon, this court evaluated voluntariness in the context of a guilty plea. 107 Hawai'i 117, 127, 111 P.3d 12, 22 (2005). To determine voluntariness, we stated that "the trial court should make an affirmative showing by an on-the-record colloquy between the court and the defendant" that it was the defendant's decision to waive all of the constitutional rights associated with a guilty plea. Id. (quoting State v. Vaitogi, 59 Haw. 52, 602, 585 P.2d 1259, 1265 (1978) (internal quotations omitted)). Similarly, for a waiver of the right to counsel to be "voluntarily and freely made," we have emphasized that the trial courts must ensure that "the record is complete" so as to show that the defendant understands

15

the risks and disadvantages of waiving counsel.  State v. Phua,

135 Hawai'i 504, 512, 517, 353 P.3d 1046, 1054, 1059 (2015).

This court's case law clearly demonstrates that when a defendant waives a fundamental right, there must be an affirmative, on-the-record showing that the waiver of the right is voluntary.  It is thus incumbent on the trial court to have a basis to conclude that a waiver is voluntary.  Unless voluntariness is gleaned from the defendant's responses, the trial court must inquire into the voluntariness of the waiver. See Baker, 132 Hawai'i at 7, 319 P.3d at 1015 (holding that there was no basis for concluding the defendant's waiver of jury trial was voluntary when the court failed to include questions regarding voluntariness in its colloquy).  Accordingly, a direct question about voluntariness is required when the defendant's statements in the colloquy do not indicate that the decision to waive a jury trial is the defendant's own free and deliberate choice.

Thus, because the circuit court did not ask a direct question addressing whether Torres's waiver was voluntary, his responses to the court must demonstrate that his waiver was his own decision without influence of duress or coercion.  To determine whether the waiver was voluntary, we evaluate "the totality of facts and circumstances" of the record in this case. Friedman, 93 Hawai'i at 68-69, 996 P.2d at 273-74.

16

During the colloquy, Torres asked whether, during a non-jury trial, "we still go through the same procedures as what my defense is and all that, right?" After the circuit court explained that the difference between a jury trial and non-jury trial is that the court decides guilt or innocence, Torres said, "Right, Your Honor. Yes. I requested that," indicating that it was Torres's own decision to waive a jury trial. Additionally, when asked if he still wanted to proceed with a bench trial knowing the penalties that he was facing, Torres expressed his sentiment that "I feel that you will be fair in weighing the evidence against me." This also evidences that Torres perceived a bench trial to be beneficial to him and that he made the decision based on this conclusion.

We conclude from the record, based on the totality of the circumstances, that Torres voluntarily waived his right to a jury trial. See Friedman, 93 Hawai'i at 68-69, 996 P.2d at 273-74. Torres's responses "affirmatively indicated" that his waiver of a jury trial was "a result of his own reflection" and free will. Id. at 70, 996 P.2d at 275. Thus, the ICA did not err in holding that Torres's waiver of his right to a jury trial was voluntary.

### B. Lewis/Monteil Pretrial Advisement

### 1. The Circuit Court Erred by Failing To Give a Pretrial Advisement

Torres also argues that the circuit court's failure to provide a pretrial advisement regarding his right not to testify was error under State v. Lewis, 94 Hawai'i 292, 12 P.3d 1233 (2000).

In Lewis, this court held that trial courts must inform defendants of the right not to testify in a pretrial advisement. Id. at 297, 12 P.3d at 1238. There, the defendant testified at trial but was given neither a pretrial advisement that he had the right not to testify nor an advisory during trial about this right before he testified. Id. at 294, 12 P.3d at 1235. The Lewis court determined that there were positive effects to be obtained "in all cases from a trial court addressing a defendant" before trial about the defendant's right not to testify. Id. at 297, 12 P.3d at 1238. Thus, we mandated that "trial courts 'prior to the start of trial, [shall] [] inform the defendant of his or her personal right to testify or not to testify[.]'" Id. (first alteration in original) (quoting Tachibana, 79 Hawai'i at 237 n.9, 900 P.2d at 1304 n.9); see also State v. Monteil, 134 Hawai'i 361, 373, 341 P.3d 567, 579 (2014) (affirming Lewis and adopting a prospective rule that trial courts are required to inform defendants during the Lewis

advisement that the decision not to testify cannot be used by the fact finder to decide the case).

Here, the circuit court clearly violated the mandate of Lewis: Torres was not given a pretrial advisement regarding his right not to testify nor was he advised that the exercise of this right may not be used by the fact finder to decide the case.  This was clear error by the circuit court.

This error may have been remedied if the circuit court had engaged in a colloquy with Torres before he testified and informed him of his right not to testify.  See Monteil, 134 Hawai'i at 372, 341 P.3d at 578.  But the circuit court also failed to conduct a colloquy before Torres testified.  Thus, at no point in the trial proceedings did the circuit court inform Torres of his constitutional right not to testify.  Under Lewis, Torres was entitled to a colloquy regarding the right not to testify.  The circuit erred by not informing him of this right, and the record does not demonstrate a knowing, intelligent, and voluntary waiver.

## 2. The Lack of a Pretrial Advisement Was Harmless Error

When the violation of a constitutional right has been established, "the conviction must be vacated unless the State can prove that the violation was harmless beyond a reasonable

doubt."[10]  Tachibana, 79 Hawai'i at 240, 900 P.2d at 1307.  Under

the harmless beyond a reasonable doubt standard, this court must

determine "whether there is a reasonable possibility that error

might have contributed to [the] conviction."  State v.

Eduwensuyi, 141 Hawai'i 328, 336, 409 P.3d 732, 740 (2018)

(quoting State v. Han, 130 Hawai'i 83, 93, 306 P.3d 128, 138

(2013)).  If such reasonable possibility exists, then "the

judgment of conviction on which it may have been based must be

set aside."  State v. Pulse, 83 Hawai'i 229, 248, 925 P.2d 797,

816 (1996).  When assessing whether the error was harmless, "[a]

crucial if not determinative consideration . . . is the strength

of the prosecution's case on the defendant's guilt."  State v.

---

[10]  The State argues that the ICA was correct in holding that a Lewis violation must satisfy the "actual prejudice" standard.  Lewis stated that, "[b]ecause we view this prior-to-trial advisement as incidental to the 'ultimate colloquy,' any claim of prejudice resulting from the failure of the trial court to give [the pretrial advisement] must meet the same 'actual[] prejudice[]' standard" espoused in Tachibana.  94 Hawai'i at 297, 12 P.3d at 1238 (third and fourth alterations in original) (citation omitted). Tachibana explained that a defendant must demonstrate actual prejudice when "a defendant asserts his or her right to testify during a colloquy conducted after the defense has rested and the trial is reopened to allow the defendant to testify[.]"  79 Hawai'i at 237, 900 P.2d at 1304.  In such a situation, a defendant's constitutional right to testify is not violated.  Rather, a court must determine whether there was actual prejudice to the defendant as a result of the delay in engaging in the colloquy.  In contrast, Tachibana stated that the failure of the court to give the ultimate colloquy is subject to harmless error review.  Id. at 240, 900 P.2d at 1307.  We thus interpret Lewis to establish that a court's failure to properly deliver the pretrial advisement is subject to the actual prejudice standard so long as the trial court subsequently engages the defendant in the ultimate Tachibana colloquy. When the ultimate colloquy is not given, however, a Lewis violation is evaluated under the harmless beyond a reasonable doubt standard.  Because here Torres received neither the pretrial Lewis advisement nor the ultimate Tachibana colloquy, we apply the harmless beyond a reasonable doubt standard.

20

Tetu, 139 Hawai'i 207, 226, 386 P.3d 844, 863 (2016) (quoting

State v. Fukusaku, 85 Hawai'i 462, 482-83, 946 P.2d 32, 52-53

(1997)).

Even had Torres been advised of his right not to

testify and chosen to exercise this right, the sum effect would

be that Torres's trial testimony would not have been elicited.

If Torres's trial testimony is thus not considered, the evidence

presented by the State with respect to the charges in this case

is nonetheless overwhelming.  To convict Torres of robbery, the

State was required to prove that Torres was armed with a

"dangerous instrument or a simulated firearm"[11] and either used

force with the intent to overcome Tokunaga's physical resistance

or threatened the use of imminent force with the intent to

compel Tokunaga's acquiescence to the taking of his property.

HRS §§ 708-840(1)(b)(i), (ii).  Tokunaga's testimony described

the events of his encounter with Torres in great detail.

Tokunaga testified that he was sitting alone on a bench in a

shopping mall and had a clear view of Torres approaching.

Tokunaga stated that he observed Torres wearing a blue shirt,

glasses, and "short pants."  When Torres arrived at the bench,

Tokunaga testified, he saw Torres's face and then saw Torres

_____

[11]     HRS § 708-840(2) defines "simulated firearm" as any object that "(a) Substantially resembles a firearm; (b) Can reasonably be perceived to be a firearm; or (c) Is used or brandished as a firearm."

point a gun at the right side of his head. Torres hit him in the face and tried to take his bag, Tokunaga stated, at which point he hit Torres back and a physical encounter ensued. Tokunaga further testified that at the conclusion of the encounter, he "saw his face" again as Torres stood up and walked to the nearby escalator.

Tokunaga's testimony was verified by video evidence that shows Torres approach Tokunaga with a pellet gun, punch Tokunaga multiple times in the face while Tokunaga is still sitting on the bench, and continue to punch Tokunaga while Tokunaga was pinned on the ground. Tokunaga unequivocally identified Torres during trial as the person who attacked him. The evidence also demonstrated that the pellet gun was a "simulated firearm"; both Tokunaga and Aki testified that the pellet gun resembled a real firearm, and it plainly appears to be a real firearm in the video. Further, a photograph of the magazine from the pellet gun recovered from the scene was entered into evidence.[12]

As to the terroristic threatening charge, the State needed to prove that Torres threatened Aki with a simulated

---

[12] It is noted that if Torres had not testified, there would not have been any evidence of self-defense, which was the defense asserted by Torres at trial to the robbery charge. At the ICA, Torres contended that he could have presented an identification defense. However, as described, the State presented overwhelming evidence that Torres was the assailant appearing in the video.

firearm with the intent to terrorize him or in reckless disregard of the risk of terrorizing him.  HRS §§ 707-715(1), 707-716(1)(e).[13]  Aki testified that during his pursuit of a man leaving the scene of the incident, the man pointed "what looked like a firearm" at him while the man was descending down the escalator.  Aki's testimony was substantiated by video evidence.  These videos document Torres's movements from three different camera angles from the time that Torres stood up at the end of the encounter with Tokunaga to when he stepped off of the escalator.  They show Torres carrying the pellet gun in his right hand to the escalator, turning to face Aki while Torres was on the escalator, and getting off the escalator with the gun in his right hand pointed upwards.  And, as explained, the testimony and video demonstrate that the pellet gun was a "simulated firearm."

Because of the strength of the State's evidence adduced from Tokunaga and Aki and the corroborating videos, the circuit court's error in not advising Torres of his right not to testify was harmless beyond a reasonable doubt.  See Tetu, 139 Hawaiʻi at 226, 386 P.3d at 863 (video footage and witness testimony presented "compelling" evidence of defendant's guilt

---

[13]    HRS § 707-715 (2014) defines "terroristic threatening" as a threat "by word or conduct, to cause bodily injury to another person or . . . to commit a felony . . . [w]ith the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person[.]"

and thus trial court error was harmless); State v. Rivera, 62 Haw. 120, 128, 612 P.2d 526, 532 (1980) (where there was a "wealth of overwhelming and compelling evidence" tending to show defendant's guilty beyond a reasonable doubt the error was harmless).  Because the error was harmless beyond a reasonable doubt, we affirm Torres's convictions.

## C. Prospectively, a Tachibana Colloquy Must Be Given in All Trials

A defendant in a criminal case "has an absolute right not to testify."  Salinas v. Texas, 570 U.S. 178, 184 (2013) (internal quotation marks omitted) (quoting Turner v. United States, 396 U.S. 398, 433 (1970) (Black, J., dissenting)).  In Hawai'i, the right not to testify has been recognized since as early as the nineteenth century.  See The King v. McGiffin, 7 Haw. 104, 113 (Haw. Kingdom 1887) (holding that a comment by the prosecution about the defendant's failure to testify was "highly improper, and contrary to the statute" although not prejudicial in the particular case).

This right is explicitly guaranteed by the United States Constitution under the Fifth and Fourteenth Amendments and by the Hawai'i Constitution under article I, section 10.[14]

---

[14]    The United States Constitution states that "[n]o person shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  It further provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S.

(continued . . .)

24

Monteil, 134 Hawaiʻi at 369, 341 P.3d at 575.  The Fifth

Amendment's protection is "fulfilled only when an accused is

guaranteed the right to remain silent unless he chooses to speak

in the unfettered exercise of his own will.  The choice of

whether to testify in one's own defense is an exercise of the

constitutional privilege."  Rock v. Arkansas, 483 U.S. 44, 53

(1987) (quoting Harris v. New York, 401 U.S. 222, 230 (1971))

(internal quotations and alterations omitted).  Additionally,

the Fourteenth Amendment to the United States Constitution

secures "the right of a criminal defendant to choose between

silence and testifying [o]n his own behalf."  Ferguson v.

Georgia, 365 U.S. 570, 602 (1961) (Clark, J., concurring); see

also Harris, 401 U.S. at 225 ("Every criminal defendant is

privileged to testify in his own defense, or to refuse to do

so.").

Under our current procedures, however, the right not

to testify does not receive protection equivalent to the

corresponding right to testify in one's own defense--a

foundational constitutional right of equivalent stature.  That

is, one fundamental right (the right to testify) is more greatly

---

(. . . continued)

Const. amend. XIV, § 1.  Similarly, the Hawaiʻi Constitution states that "[n]o person shall . . . be compelled in any criminal case to be a witness against oneself."  Haw. Const. art. I, § 10.

25

protected than the equally fundamental parallel right (the right not to testify).

As discussed, we held in Lewis that courts must advise a defendant prior to the start of trial of both the right to testify and the right not to testify. 94 Hawaiʻi at 297, 12 P.3d at 1238. This advisement supplements the "ultimate colloquy" regarding the right to testify that we held in Tachibana must be given at the close of the defendant's case if the defendant has not testified. 79 Hawaiʻi at 237 n.9, 900 P.2d at 1304 n.9. Yet we have thus far declined to require trial courts to engage the defendant in a corresponding colloquy regarding the right not to testify when a defendant elects to take the stand. See Lewis, 94 Hawaiʻi at 295-96, 12 P.3d at 1236-37. In other words, we have required courts to confirm that a defendant's waiver of the right to testify is knowing, intelligent, and voluntary, but we have not required a similar confirmation regarding a defendant's waiver of the fundamental right not to testify.

This disparate treatment makes it easier for a defendant in a criminal case to waive the right not to testify than to waive the right to testify because there is no "ultimate colloquy" from the court regarding the right not to testify and its consequences. By contrast, when a defendant waives the right to testify, the defendant must make an on-the-record, affirmative choice by answering questions from the court

confirming such a decision. This case demonstrates why the right not to testify deserves protection that is equal to that of the right to testify.

In Tachibana, this court recognized that there was a necessary balance between the right to testify and the right not to testify. 79 Hawaiʻi at 235, 900 P.2d at 1302. We noted the risk that advising the defendant of the right to testify could influence the defendant's decision on whether to waive the right not to testify, which was a "constitutionally explicit and more fragile right." Id. (quoting United States v. Martinez, 883 F.2d 750, 760 (9th Cir. 1989)). Thus, the Tachibana court advised trial courts to advise defendants of both the right to testify and the right not to testify in order to "reduce the possibility that the trial court's colloquy could have any inadvertent effect on either the defendant's right not to testify or the attorney-client relationship." Id. at 237 n.9, 900 P.2d at 1304 n.9.

This court reiterated the importance of this "even balance" between a defendant's right to testify and the right not to testify in Monteil.[15] 134 Hawaiʻi at 370, 341 P.3d at 576.

---

[15] In Monteil, the defendant testified after the trial court informed him prior to trial that he had the "right to remain silent and the right against self-incrimination" and that if he chose to testify that the State would be able to cross-examine him and the court would consider his testimony in deciding guilt or innocence. 134 Hawaiʻi at 362-63, 365, 341 P.3d at 568-69, 571.

We explained that "Hawai'i has historically protected both the right to testify and the right not to testify." Id. at 369, 341 P.3d at 575. The danger in providing an "imbalance in information" between the right to testify and the right not to testify, we explained, was that the "more fragile right" not to testify would be threatened because defendants that choose to testify would not be informed of the "relevant circumstances" of their decision from the beginning of the trial. Id. at 372, 341 P.3d at 578. Specifically, the court reasoned that the failure to advise a defendant that the exercise of the right not to testify "could not be used against him in deciding the case," undermined the purposes of the pretrial advisement: to limit post-conviction challenges and to avoid "inadvertently influenc[ing]" the defendant's decision-making process in deciding whether to testify. Id.

These repeated statements of the importance of properly balancing the constitutional right to testify with the equally important right not to testify are at odds with our current practice of not requiring a Tachibana colloquy when a defendant waives the right not to testify. The disparity is even more striking when we consider other parallel contexts in which our precedent requires trial courts to conduct an on-the-record colloquy to ensure that a waiver of a constitutional right is knowing, intelligent, and voluntary.

28

For example, in State v. Ibuos, the trial court accepted a jury trial waiver from the defendant's counsel. 75 Haw. 118, 118, 857 P.2d 576, 577 (1993). Because the defendant had a constitutional right to a jury trial, this court held that the trial court erred when it failed to conduct an on-the-record colloquy to ensure that the defendant waived the right to a jury trial knowingly and voluntarily. Id. at 120, 857 P.2d at 577. Similarly, in State v. Murray, defense counsel stipulated that the defendant had previously been convicted of abuse of a family or household member, which was an element of the charged offense. 116 Hawaiʻi 3, 5, 169 P.3d 955, 957 (2007). The stipulation was accepted by the trial court without a colloquy between the court and the defendant. Id. On appeal, this court held that defendants in a criminal case have a constitutionally and statutorily protected right to have each element of an offense proven beyond a reasonable doubt. Id. at 10, 169 P.3d at 962. Thus, the court in Murray held that trial courts must engage in a colloquy with a defendant when the defendant seeks to waive, via stipulation, the right to have the State prove each element of an offense. Id. at 12, 169 P.3d at 964. And in State v. Phua, the defendant appeared at a sentencing hearing without an attorney and the trial court conducted a brief colloquy informing the defendant of the right to counsel. 135 Hawaiʻi 504, 508-09, 353 P.3d 1046, 1050-51 (2015). This court

held that because the right to counsel was guaranteed by the United States Constitution and the Hawaiʻi Constitution, a defendant's waiver of the right to counsel must be knowing, intelligent, and voluntary, as insured by an adequate on-the-record colloquy. Id. at 512, 353 P.3d at 1054.

Tachibana, as explained, held that the right to testify is a fundamental right and that a trial court is required to engage in an on-the-record colloquy to ensure that waiver of the right is knowing, intelligent, and voluntary. 79 Hawaiʻi at 236, 900 P.2d at 1303. Tachibana recognized that the right to testify derives partly from the right not to testify as provided by the Fifth Amendment to the United States Constitution. Id. at 231, 900 P.2d at 1298. Thus, this court held that the decision whether to testify or not testify was a decision that was required to be decided by the defendant, not by defense counsel, and that trial courts had a duty to ensure that the waiver of the right to testify was knowing, intelligent, and voluntary. See id. at 236, 900 P.2d at 1303 (quoting Hurn v. State, 872 P.2d 189, 198 (Alaska App. 1994) ("[T]he decision to testify or not rests with [the defendant.]")).

Ibuos, Murray, Phua, and Tachibana all involved the waiver of a fundamental constitutional right, which is also the circumstance in this case. Like other fundamental rights, the

30

waiver of the right not to testify should require a trial court to engage in an on-the-record colloquy with the defendant to ensure that the waiver is knowing, intelligent, and voluntary. This is necessary to protect the "constitutionally explicit and more fragile right," Tachibana, 79 Hawai'i at 235, 900 P.2d at 1302, that has been "historically protected" by Hawai'i law. Monteil, 134 Hawai'i at 369, 341 P.3d at 575. Additionally, adopting such an approach would be consistent with some of the important purposes of the colloquy requirement; it would protect a defendant from testifying based upon belief or advice that to do otherwise would result in an inference of guilt, it would reduce the possibility that the trial court's colloquy could "inadvertent[ly] effect" the defendant's right not to testify, and it would reduce appeals (as exemplified in this case) and post-conviction challenges based on the defendant's asserted lack of a knowing, intelligent, and voluntary waiver of the right not to testify. See Murray, 16 Hawai'i at 11-12, 169 P.3d at 963-64; Tachibana, 79 Hawai'i at 236, 900 P.2d at 1303. Thus, we hold that trial courts are required to engage in an on-the-record colloquy with a defendant when the defendant chooses to testify to ensure that a waiver of the right not to testify is knowing, intelligent, and voluntary.[16] The implication of such a

---

[16] Relying on People v. Mozee, 723 P.2d 117, 124 (Colo. 1986) (en

(continued . . .)

requirement merely requires the trial court to give the

Tachibana colloquy to a defendant whether or not the defendant

elects to testify.  That is, we are providing equal treatment to

two fundamental constitutional rights that merit equivalent

protection.  This requirement will be effective in trials

beginning after the filing date of this opinion.

_____

(. . . continued)

banc), Lewis identified three rationales as to why such a colloquy was not
required.  First, Lewis stated that a defendant has likely received one or
more Miranda advisements from law enforcement officials during the course of
the criminal investigation.  94 Hawai'i at 296, 12 P.3d at 1237.  However,
Miranda warnings are not given upon every arrest; they are only required
prior to conducting custodial interrogation of the defendant.  See State v.
Kazanas, 138 Hawai'i 23, 34-35, 375 P.3d 1261, 1272-73 (2016).  And, even if
the Miranda warnings are administered, there is an extended lapse of time
between when they are given and when the defendant exercises or waives the
right not to testify at trial.

        Second, the Lewis court stated that a colloquy was not required when a
defendant testifies because the defense counsel likely would not allow the
defendant to take the stand without explaining to the defendant the right to
remain silent and the possible consequences of waiving the right.  94 Hawai'i
at 296, 12 P.3d at 1237.  This rationale has been effectively rejected by
subsequent cases of this court that have held that speculation about a
defense counsel's privileged, off-the-record conversation with the defendant
cannot replace the trial court's duty to conduct an on-the-record colloquy
with a defendant.  See, e.g., State v. Eduwensuyi, 141 Hawai'i 328, 336, 409
P.3d 732, 740 (2018)("[A] court may not rely upon an off-the-record
discussion between counsel and a defendant to establish a valid waiver of a
constitutional right.").

        Finally, Lewis reasoned that a colloquy was not required when a
defendant testifies because "any defendant who testifies would expect to be
cross-examined."  94 Hawai'i at 296, 12 P.3d at 1237.  However, a defendant's
knowledge that the State has the opportunity to cross-examine the defendant
is not equivalent to knowledge of the constitutional right not to testify,
nor to knowledge of the protections afforded to the defendant when waiving
the right to testify, such as the fact that the defendant's silence cannot be
used as an inference of guilt in deciding the case.  See Monteil, 134 Hawai'i
at 372-73, 341 P.3d at 578-79.

        Accordingly, none of the reasons cited by the Lewis court provide a
persuasive basis to justify the disparate treatment that is accorded to the
defendant's fundamental right to not testify at trial.

## V. CONCLUSION

Based on the foregoing, the ICA's judgment on appeal is affirmed.

Emmanuel G. Guerrero
for petitioner

Chad M. Kumagai
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

