**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-23-0000002
31-OCT-2025
08:09 AM
Dkt. 72 SO**

NO. CAAP-23-0000002

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
TYSON K. AU, Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF THE SECOND CIRCUIT
WAILUKU DIVISION
(CASE NO. 2DCC-21-0001353)

SUMMARY DISPOSITION ORDER
(By: Nakasone, Chief Judge, Hiraoka and McCullen, JJ.)

Defendant-Appellant Tyson K. **Au** appeals from the
District Court of the Second Circuit's May 19, 2022 "Findings of
Fact, Conclusions of Law, and Order Denying Defendant's Motion
to Dismiss Complaint" (**Denial Order**); November 9, 2022 "Findings
of Fact and Conclusions of Law, and Verdict" (**Verdict**); and
December 16, 2022 Judgment and Sentence of the Court (**Judgment**).[1]

---

[1] The Honorable Lauren M. Akitake presided over the proceedings related to Au's motion to dismiss. The Honorable Michelle L. Drewyer presided over the remainder of the trial.

On appeal, Au contends the district court erred by (1) denying his motion to dismiss, and (2) failing to conduct a Lewis and Tachibana colloquy.[2]

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the issues raised and the arguments advanced, we resolve this appeal as discussed below and affirm.

In 2021, Department of Land and Natural Resources Law Enforcement Officer Matthew Pauole (**Officer Pauole**) observed Au toss a six-foot, monofilament throw net into the ocean at Kīhei Boat Ramp in Maui County.  Officer Pauole measured the mesh of the net at one-half inch and cited Au for, among other things, possessing a throw net with a mesh of less than two inches while on the shore.

The State charged Au via amended complaint for violating Hawaiʻi Administrative Rules (**HAR**) § 13-75-10(a). Under HAR § 13-75-10(a), "[i]t is unlawful for any person who is in the water or on or about the shore where fish can be taken to have in the person's possession a throw net with a mesh of less than two inches stretched mesh."

---

[2]  Tachibana v. State, 79 Hawaiʻi 226, 236, 900 P.2d 1293, 1303 (1995); State v. Lewis, 94 Hawaiʻi 292, 297, 12 P.3d 1233, 1238 (2000).

Au moved to dismiss the complaint, arguing his conduct — "having a throw net with holes smaller than two inches" — was a "traditional and customary right protected by Article XII, Section 7" of the Hawai'i Constitution and Hawai'i Revised Statutes (**HRS**) § 1-1 (2009).[3]  The State opposed Au's motion.

At the evidentiary hearing on his motion, Au introduced testimony from a childhood friend, Cullen **Bell**.  Bell testified he learned about using nets to fish from his father, school, and stories or song that were passed through generations.  Regarding mesh size, Bell testified:  "I know for a fact they -- they wouldn't be measuring the holes on their nets"; "the holes on the nets were small"; and the holes were "[j]ust enough to let the water pass through."

Au testified on his own behalf.  He testified as to his Hawaiian lineage as far back as 1834.  Au testified on learning to fish from "my ancestors passed down to my grandmother, my grandfather, my father, to me" and "[m]y friends teach me."

---

[3]  Au also argued the district court should dismiss the complaint under HRS § 702-236(1)(b) (2014), because his "conduct should be considered de [m]inimis."  On appeal, however, Au does not challenge any of the court's findings or conclusions in either the May 19, 2022 Order Denying Au's Motion to Dismiss or November 9, 2022 Verdict related to its determination that he did not meet his burden in establishing that his conduct was de minimis.

Thus, this court need not address the issue.  Hawai'i Rules of Appellate Procedure Rule 28(b)(4) ("Points not presented in accordance with this section will be disregarded[.]").

For bait fishing, Au "was taught if the eyes are bigger, you won't be able to catch 'em.  So when they're smaller you're able to catch 'em."  Au further explained that "at the same time you're not killing other fish because the gills don't get stuck, you know.  You can release.  It's an easy release as in with two inch eyes nets, you know, all that stuff, they get stuck."  When asked about catching ʻoama with a hook, Au responded it was possible but "[t]here's like a certain amount of time they're not eating" or "you're working all day" and "[s]o you have to catch 'em with a net."

When asked, "were there regulations on . . . ancient Hawaiians net sizes[,]" Au responded, "No."  Au, however, acknowledged "restrictions can still be there . . . . [I]t can be managed . . . ."

Au further testified that Kīhei Boat Ramp has a parking area, a bathroom, and a shower.

Although the State asserted Au did not show he was "a descendant of native Hawaiians who inhabited the islands prior to . . . 1778[,]" it acknowledged Au is Hawaiian.  The State also "concede[d] that net fishing is a traditional practice done by native Hawaiians" and "no one is stopping Mr. Au from using a net to fish" but "[i]t's the size of the net that matters."  The State argued that "the regulation is about the size" and "the State's interest is the preservation of fish for future

generations." The State further argued Kīhei Boat Ramp is "fully developed land."

The district court found Au failed to meet all three State v. Hanapi factors and denied Au's motion to dismiss. 89 Hawaiʻi 177, 185-87, 970 P.2d 485, 493-95 (1998). The case proceeded to trial. The district court found Au guilty and sentenced him to pay a $150.00 fine plus a $30.00 criminal injury fee. The district court stayed the sentence pending appeal.

**(1)** We first address Au's contention that the district court erred in denying his motion to dismiss, because he "satisfied the three factors set forth in" Hanapi, 89 Hawaiʻi at 185-87, 970 P.2d at 493-95.

Under Hanapi, defendants asserting the defense that their conduct is a constitutionally protected Native Hawaiian right have the burden of showing: (1) they qualify as a Native Hawaiian "within the guidelines set out in" Public Access Shoreline Hawaiʻi v. Hawaiʻi County Planning Commission (PASH), 79 Hawaiʻi 425, 448-49, 903 P.2d 1246, 1269-70 (1995); (2) their "claimed right is constitutionally protected as a customary or traditional native Hawaiian practice"; and (3) "the exercise of the right occurred on undeveloped or 'less than fully developed property.'" Hanapi, 89 Hawaiʻi at 185-86, 970 P.2d at 493-94 (citations omitted). All three factors must be proven.

5

Assuming, without deciding, Au met his burden as to the Hanapi factors, "[i]t must be determined whether [his] conduct was reasonable, by balancing the State's interests in regulating [his] activity with [his] interest" in engaging in a traditional and customary practice. See State v. Armitage, 132 Hawai'i 36, 54, 319 P.3d 1044, 1062 (2014). In balancing the State's interest and Au's right, courts look to whether defendants attempted to exercise their traditional and customary practice "in accordance with the laws of the State." See id. at 54-55, 319 P.3d at 1062-63 (citation omitted).

Gathering from the sea is firmly rooted in Hawaiian tradition and custom. "Along the seashore and in the ocean, Hawaiians would gather items such as limu (seaweed), 'opihi (limpets), wana (sea urchins), and other marine products to supplement their daily diet. Hawaiians also gathered i'a (fish), their primary protein source, in areas ranging from coral reefs to deep water." David M. Forman & Susan K. Serrano, Traditional and Customary Access and Gathering Rights, in Native Hawaiian Law: A Treatise 776, 782 (Melody Kapilialoha MacKenzie et al. eds., 2015) (footnote omitted).

But gathering from the sea did not go unchecked — there were certain kapu (prohibitions):

> For instance, with regard to sea gathering practices, a kapu was placed on deepwater fishes such as the aku (ocean bonito) and the ʻōpelu (mackerel) during spawning season. Such fish were susceptible to overfishing because they bore their young in the open ocean--as compared with the manini (reef surgeonfish), uhu (parrotfish), palani (surgeonfish known for its strong odor), and kala (unicornfish), which bore their young in protected tidal pool areas. <u>The resident chiefs could impose kapu regulating the size, type, and number of items gathered, as well as the manner in which they were gathered</u>--subject to overrule by a higher-ranking aliʻi.

<u>Id.</u> (emphasis added). "Native practitioners continually reaffirm their knowledge of the ʻāina and its resources through the exercise of traditional and customary gathering, hunting, and fishing practices for subsistence, cultural, and religious purposes." <u>Id.</u> at 791. "Importantly, such practices are not intrusive or obnoxious but are conducted with 'honor and respect for traditional *ʻohana* cultural values and customs in the harvesting of natural resources and the sharing of what is gathered with family and neighbors.'" <u>Id.</u>

Following the hearing on Au's motion to dismiss, the district court concluded (albeit in its de minimis analysis) that "HAR § 13-75-10 is in place to manage, conserve, and restore [Hawaiʻi's] fishing resources for present and future generations[,]" and the "harm or evil likely sought to be prevented is the over-fishing of smaller, younger fish to allow growth and reproduction to provide for future generations." (Some formatting altered.)

Au, however, did not show HAR § 13-75-10(a) *unreasonably* regulates the exercise of his claimed right. See PASH, 79 Hawai'i at 451, 903 P.2d at 1272 (holding reasonable exercise of customary or traditional rights must be protected to extent feasible). Nor did he present evidence that he attempted to catch bait fish in accordance with applicable regulations by using a scoop net or obtaining a permit to use a fine mesh throw net.[4] See Armitage, 132 Hawai'i at 54, 319 P.3d at 1062 (explaining defendants "made no attempt to avail themselves of the applicable procedures to obtain lawful entry into the" Kaho'olawe Island Reserve); State v. Pratt, 127 Hawai'i 206, 218, 277 P.3d 300, 312 (2012) ("While Pratt has a strong interest in visiting [the restricted area], he did not attempt to visit in accordance with the laws of the State.").

Thus, under the circumstances in this case, the balance weighed in favor of the State's interest to regulate net size and protect smaller fish, and Au did not show he was protected from penal liability when fishing with a throw net that had half-inch stretched mesh. See Armitage, 132 Hawai'i at 55, 319 P.3d at 1063 (holding "the balance weighs in favor of the State's interest in protecting the health and safety of

---

[4] HAR § 13-75-14(a)(7), for example, permits "[a]ll persons [to] use hand nets or scoop nets of smaller mesh to take fish or other marine life for noncommercial purposes only; provided that the net, including any handle and other attachment thereto, shall not exceed three feet in any dimension."

those individuals who travel to Kahoʻolawe" and defendants' "activities then do not fall within a haven protecting them from criminal liability").

**(2)** Au next contends the district court violated his right not to testify by failing to administer a Lewis and Tachibana colloquy. Tachibana v. State, 79 Hawaiʻi 226, 236, 900 P.2d 1293, 1303 (1995); State v. Lewis, 94 Hawaiʻi 292, 297, 12 P.3d 1233, 1238 (2000).

Courts are required to advise defendants of their right to testify and right not to testify and, in so doing, obtain an on-the-record waiver. Tachibana, 79 Hawaiʻi at 236, 900 P.2d at 1303; Lewis, 94 Hawaiʻi at 297, 12 P.3d at 1238; State v. Torres, 144 Hawaiʻi 282, 294-95, 439 P.3d 234, 246-47 (2019). The Lewis colloquy is conducted prior to the start of trial, and the "ultimate [Tachibana] colloquy should be conducted after all evidence other than the defendant's testimony has been received[.]" Tachibana, 79 Hawaiʻi at 237 n.9, 900 P.2d at 1304 n.9; Lewis, 94 Hawaiʻi at 294, 12 P.3d at 1235.

Inexplicably, the district court did not conduct either colloquy. The district court thus violated Au's constitutional right not to testify.

9

"When the violation of a constitutional right has been established, 'the conviction must be vacated unless the State can prove that the violation was harmless beyond a reasonable doubt.'" Torres, 144 Hawaiʻi at 290-91, 439 P.3d at 242-43 (quoting Tachibana, 79 Hawaiʻi at 240, 900 P.2d at 1307).

In "assessing whether the error was harmless, a crucial if not determinative consideration is the strength of the prosecution's case on the defendant's guilt." Id. at 291, 439 P.3d at 243 (citation modified). And if defendants testify without being advised of their right not to, courts will ignore their testimony and consider whether "the evidence presented by the State with respect to the charges . . . is nonetheless overwhelming." See id. at 291, 439 P.3d at 243.

Because Au testified at trial without the required colloquies, we consider only the evidence the State presented. See id.

Again, under HAR § 13-75-10(a), "[i]t is unlawful for any person who is [(1)] in the water or on or about the shore where fish can be taken [(2)] to have in the person's possession [(3)] a throw net with a mesh of less than two inches stretched mesh."

Officer Pauole testified he observed Au standing "on that little sandy cove to the right of the -- of the boat ramp on the shoreline"; "holding a monofilament throw net"; and

10

throwing the net into the water.  Officer Pauole further testified to measuring Au's throw net with a state-issued caliper, and "[t]he size of the net was recorded at a half inch stretch mesh."

The district court found "Officer Pauole's testimony to be credible."  Without considering Au's testimony, the evidence the State presented supported each element of the offense.

Thus, there is no reasonable possibility the failure to colloquy Au contributed to his conviction.  The district court's error was harmless beyond a reasonable doubt.  See Torres, 144 Hawaiʻi at 290-91, 439 P.3d at 242-43.

Based on the foregoing, we affirm the district court's May 19, 2022 Denial Order; November 9, 2022 Verdict; and December 16, 2022 Judgment.

DATED:  Honolulu, Hawaiʻi, October 31, 2025.

On the briefs:                       /s/ Karen T. Nakasone
                                      Chief Judge

Jon N. Ikenaga,
Deputy Public Defender,      /s/ Keith K. Hiraoka
for Defendant-Appellant.     Associate Judge

Renee Ishikawa Delizo,       /s/ Sonja M.P. McCullen
Deputy Prosecuting Attorney,  Associate Judge
County of Maui,
for Plaintiff-Appellee.